**SUPERIOR FIREPLACE COMPANY,**
**a Delaware corporation, Plaintiff,**

v.

**The MAJESTIC PRODUCTS COMPANY, a Delaware corporation and Vermont Casting, Inc. a Vermont corporation, Defendants.**

**No. CV–98–1816LGBAIJX.**

United States District Court,
C.D. California,
Western Division.

Jan. 10, 2000.

David A Dillard, Craig A Gelfound, Christie Parker & Hale, Pasadena, CA, for Superior Fireplace Company, plaintiff.

Thomas M Small, Kenneth L Wilton, Small & Larkin, Los Angeles, CA, Michael E Milz, Brinks Hofer Gilson & Lione, Chicago, IL, Michael H Baniak, Michael D Gannon, Baniak Nicholas Pine & Gannon, Evanston, IL, for Majestic Products Company, Vermont Castings. Inc, defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CERTIFICATE OF CORRECTION AND OF INTERVENING RIGHTS;

ORDER MOOTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT;

ORDER MOOTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO INVALIDITY OF CLAIM 2;

ORDER MOOTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY AND INFRINGEMENT

ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

BAIRD, District Judge.

## I. INTRODUCTION

This litigation arises out of the alleged infringement of a patent for a heating device, identified as United States Patent 5,678,534 (" '534"). Currently before the Court are (1) defendants' motion for summary judgment of invalidity of certificate of correction and intervening rights; (2) defendants' motion for summary judgment of non-infringement; (3) defendants' motion for summary judgment of invalidity of claim 2; and (4) plaintiff's motion for summary judgment of patent infringement and of validity of U.S. Patent No. 5,678,534.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

Plaintiff Superior Fireplace Company ("Superior") owns, by assignment, the rights to the '534 Patent. (Complaint, 2:20). Plaintiff alleges that defendants, The Majestic Products Company ("Majestic"), Vermont Castings, Inc., ("Vermont"), and The Earth Stove, Inc. ("Earth Stove"),

sell heating devices that infringe on the '534 Patent. The '534 Patent is for a compact heating device that assumes the appearance of a traditional fireplace but does not use wood for fuel and does not require as much space as a conventional fireplace. ('534 Patent, Abstract). The invention's prior art used gas or oil for fuel to eliminate the work associated with feeding a wood burning fire and cleaning its remnants. ('534 Patent, col. 1, lns. 16–29). To eliminate the space constraints of a conventional fireplace, the prior art was also made in a shallow form to fit into confined spaces. ('534 Patent, col. 1, lns. 30–32). This form also minimized the quantity of material used, and therefore, the cost of the apparatus. ('534 Patent, col. 1, lns. 32–34).

A central problem with the prior art is that it could not be recessed into building walls or other confined spaces containing flammable materials because of the potential for the heat source creating a fire. ('534 Patent, col. 1, lns. 56–64). The instant invention, however, projects heat away from its casing and into the room to eliminate this fire hazard. ('534 Patent, col. 2, 9–11; '534 Patent, col. 4, lns. 37–40). To release exhaust emissions, the prior art also required an outlet to the exterior of the room that houses the apparatus. ('534 Patent, col. 1, ln. 65—col. 2, lns. 1–11). The instant invention does not require an exterior exhaust pipe, thereby facilitating its use in a wider range of space configurations. ('534 Patent, col. 4, lns. 37–40). Finally, the instant invention uses a reflective surface located behind the flame to create the visual effect of a fire wider than the actual burning fire. ('534 Patent, col. 4, lns. 33–36). This reflective surface allows for a shallower fireplace without compromising the appearance of a "deep" fire. ('534 Patent, col. 4, lns. 33–36).

### B. LANGUAGE OF THE PATENT

The patent contains five claims, but only the first three claims were ever in dispute. They are as follows:

1. A gas log fireplace comprising in combination:

a housing having a top wall, bottom wall, side walls and a rear wall;

a firebox within the housing comprising the top wall, rear wall[s] [1] and side walls, said firebox forming a primary combustion chamber;

a room air plenum comprising a top room air plenum between the top wall of the firebox and the top wall of the housing, a rear room air plenum between the rear wall of the firebox and the rear wall of the housing in communication with the top room air plenum;

an inlet opening for allowing room air to enter the rear room air plenum;

an outlet opening in communication with the top room air plenum for allowing room air and exhaust products in the top room air plenum to be exhausted into a room in which the fireplace is situated;

an intake opening into the firebox for receiving room air into the primary combustion chamber;

a burner within the firebox, at least one artificial log within the firebox adjacent to said burner and means for supporting said at least one log within the firebox;

means for delivering a source of combustible gas to the burner;

an exhaust opening in the top wall of the firebox;

a catalytic converter positioned in the exhaust opening of the firebox and forming a secondary combustion chamber; and

whereby exhaust products from the primary combustion chamber are received by the catalytic converter wherein secondary combustion takes place and the exhaust products from the secondary combustion chamber are received by the top room air plenum and are mixed with room air received by the rear room air plenum and exhausted into the room in which the fireplace is situated.

2. A fireplace as claimed in claim 1 wherein the fireplace operates with a substantial portion of yellow flame provided in the combustion chamber.

3. A fireplace as claimed in claim 2 wherein the exhaust from the primary combustion chamber comprises from about 2% to about 10% oxygen.

('534 Patent, col. 5, ln. 40—col. 6, ln. 38).

## C. PROCEDURAL HISTORY

On March 21, 1998, plaintiff filed the instant lawsuit against Majestic, Vermont, and the Earth Stove, Inc. for patent infringement. Plaintiff and defendant Earth Stove settled their dispute, and Earth Stove was dismissed from the suit on March 8, 1999. On June 14, 1999, plaintiff asked this Court to construe the '534 patent pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995) (en banc). The parties identified a total of thirteen terms which were in dispute. Relevant to the instant four motions, the Court held that a "gas log fireplace" is an apparatus which allows the view of flames and uses gas together with a log to simulate a solid fuel fireplace; that a "room air plenum" is a space serving as a receiving chamber for heated or cooled air; that the "rear room air plenum" is the rear space serving as a receiving chamber for heated or cooled air; that the "bottom wall" constitutes the bottom enclosure of the housing, which may also form the bottom enclosure of the firebox; that the "top room air plenum" is the top space serving as a receiving chamber for heated or cooled air; that the "means for supporting said at least one log" constitutes a method of connecting the log to the burner housing's surface; that to "mix" is to put (various material, objects, etc.) together in a homogeneous or reasonably uniform mass; that a "substantial portion of yellow flame" means a flame that simulates the appearance of a wood burning flame; and that the exhaust or flue gases from the primary combustion chamber must be about 2% to about 10% oxygen. The Court also held that claim 2 was not void for indefiniteness.

[1.] Whether this term should be singular or plural is at issue in this case.

At the time of the *Markman* hearing, only one of the disputed terms was not addressed by the Court—"rear walls." At the time, plaintiff argued that the Court should interpret the term "rear walls" in the singular form because its use in the plural form was a typographical error. Plaintiff had represented to the Court that the Patent and Trademark Office ("PTO") had made a typographical error on the actual patent and that it was in the process of obtaining a certificate of correction. Plaintiff did so through the July 19, 1999 declaration of attorney Constantine Marantidis. At that time, however, the Court was not presented with the certificate, and therefore reserved judgment on that issue for a later time. The patent was eventually corrected, not pursuant to 35 U.S.C. § 254 ("section 254"), but rather pursuant to 35 U.S.C. § 255 ("section 255"), which governs errors made by the patent applicant, not errors made by the PTO.

### D. THE INSTANT MOTIONS

Defendants argue that the PTO erred when it issued the certificate of correction because section 255 does not allow corrections to be made unless the mistake is of a clerical or typographical nature, or of minor character, and the correction does not involve such change in the patent as would constitute new matter or would require re-examination. *See* 35 U.S.C. § 255. Defendants argue that the change here is not permitted by the statute. As such, defendants argue that because the accused devices only have one rear wall, and the patent should be read to require two rear walls, the accused device does not infringe the '534 patent. That argument is the subject of one of defendant's motions for summary judgment. In addition to arguing non-infringement because of the inval-

idity of the certificate of correction, defendants also argue that as a result of this Court's construction of the claims in the *Markman* hearing, plaintiff cannot show infringement as a matter of law. Defendants argue that the Majestic Fireplaces' exhaust products do not "mix" with room air; that there are no exhaust products in the "top room air plenum;" and that there is no "means for supporting said at least one log." Furthermore, defendants argue that the Vermont Casting Stove also does not infringe the '534 patent because exhaust products do not "mix" with room air inside of the unit; because the unit is not a "fireplace;" because it does not have a "room air plenum" comprised of a "top room air plenum" and a "rear room air plenum;" because it does not have a "bottom wall;" because its firebox is not "within the housing;" and finally because there is no "means for supporting said at least one log." Those arguments are also the subject of their own separate motion for summary judgment. Finally, defendants renew their argument that claim two, as construed by this Court, is invalid in view of its indefiniteness. That argument is also the subject of its own motion for summary judgment.[2]

Plaintiff also filed a motion for summary judgment. Plaintiff argues that there are no genuine issues of material fact as to the validity of the '534 patent; that there are no genuine issues of material facts that the accused products fall within the scope of claim one of the '534 patent; and that even if the accused devices do not literally infringe on plaintiff's patent, that there are no genuine issues of material fact that the accused devices infringe the '534 patent under the doctrine of equivalents. Plaintiff also argues that a permanent injunction is warranted in this case.[3]

---

**2.** The Court is not blind to defendants' attempt to circumvent the page restriction of Local Rule 3.10 by their filing of three separate motions for summary judgment. The Court is also not blind to defendants' attempt to circumvent the page restriction of Local Rule 3.10 by using a font smaller than the one required by Local Rule 3.4.1. The next time

that defendants' counsel's papers violate the Local Rules, whether in this case or others, their papers will be rejected by this Court.

**3.** As mentioned above, the Court is not blind to plaintiff's violation of Local Rule 3.4.1. By using a font smaller than ten character per inch, plaintiff is able to circumvent the page

## III. STANDARD

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate in a patent case as in any other case. *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795–96 (Fed. Cir.1990). Thus, Rule 56 provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact would find other than for the moving party. Conversely, on an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Where the operative facts are substantially undisputed, and the heart of the controversy is the legal effect of such facts, such a dispute effectively becomes a question of law that can, quite properly, be decided on summary judgment. *See Odle v. Heckler*, 707 F.2d 439, 440 (1983). However, summary judgment should not be granted where contradictory inferences

may be drawn from undisputed facts. *See Braxton–Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (1985). In such a case, the non-moving party must show that the inferences it suggests are reasonable in light of the competing inferences. *See Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. ANALYSIS

### A. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CERTIFICATE OF CORRECTION AND OF INTERVENING RIGHTS.

#### 1. STANDARD

■ In reviewing PTO decisions, the courts used to analyze the PTO's factual findings using a "clearly erroneous" standard of review, which generally governed appellate review of district court findings of facts, rather than the less stringent standards set forth in the Administrative Procedure Act ("APA"), which permit a court to set aside agency findings of facts found to be arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *See* 5 U.S.C. § 706; *Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 1818–19, 144 L.Ed.2d 143 (1999). After *Dickinson*, however, absent an exception, a reviewing court must apply the review standards applicable to agency review. *See id.* As such, this Court must decide whether the factual findings associated with the PTO's granting of the certificate of correction were arbitrary, capricious, an abuse of discretion, or unsupported by the evidence. As to findings of law, however, the Court gives no deference to the PTO and reviews those decisions de novo. *See In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir.1999).

limitation imposed by Local Rule 3.10. The next time plaintiff's counsel's papers violate

any of the Local Rules, they will be rejected.

**2. CERTIFICATE OF CORREC-TION PURSUANT TO 35 U.S.C. § 254—FAULT OF THE PTO OF-FICE**

Prior to the certificate of correction, claim one read as follows: "A gas log fireplace comprising in combination: ... a firebox within the housing comprising a top wall, *rear walls* and side walls, said firebox forming a primary combustion chamber...." ('534 Patent, col. 5, lns. 39–46) (emphasis added). Such description is consistent with figure 2, which is found in the '534 patent itself, and reproduced below. However, plaintiff argued to the PTO that the addition of the "s" in rear walls was an error made by the PTO. As such, plaintiff sought a certificate of correction under section 254. Section 254 provides that

Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Commissioner may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents. A printed copy thereof shall be attached to each printed copy of the patent, and such certificate shall be considered as part of the original patent. Every such patent, together with such certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had originally issued in such corrected form....

35 U.S.C. § 254. In short, if a certificate of correction was issued under section 254 by the PTO, the Court would be compelled to enforce the patent as if it were originally written with the singular term "rear wall."

*Fig. 2*

### a. PLAINTIFF'S REPRESENTATIONS

In the reply to its *Markman* motion, plaintiff represented that it had obtained a certificate of correction from the Patent and Trademark Office changing the patent language from "rear walls" to "rear wall." Plaintiff did so through the July 19, 1999 declaration of attorney Constantine Marantidis. This declaration stated that the Patent and Trademark Office authorized the change over the phone and that a certificate was in the mail. (*Markman* Marantidis Decl., ¶¶ 4–7). The declaration also represented that the error was committed on the part of the Patent and Trademark Office, rather than the patentee. (*Markman* Marantidis Decl., ¶ 6). As such, the declaration implied that the PTO was issuing a certificate of correction under section 254.

As evidenced by the Court's discussion in its *Markman* decision, the Court also believed that plaintiff's references to a certificate of correction in the Marantidis declaration referred to a certificate of correction issued under section 254. *See* August 31, 1999 Order.

### b. THE CERTIFICATE WAS NOT ISSUED PURSUANT TO SECTION 254

However, it has now come to this Court's attention that by April 29, 1999 (almost three months before the Marantidis declaration) plaintiff knew that its application for a certificate of correction under section 254 had been denied. *See* Morella Decl., Ex. B at 29. Plaintiff had received notification from the PTO that the PTO believed that "the ['534] patent [was] printed in accordance with the record ... of the application as passed to issue by the examiner." *Id.* Consequently, "[t]here being no fault on the part of the [PTO], it has no authority to issue a certificate of correction under the provisions of 35 U.S.C. 254 and Rule 322 of the Rules of Practice of the United States [PTO] in Patent Cases." *Id.* As such, the representations in the Marantidis declaration were extremely misleading, or worse, false. As a result of the misleading information contained in this declaration, the Court failed to address the certificate of correction issue at the time of the *Markman* hearing. Thus, the Court finds that the declaration was filed for an improper purpose—namely to delay this Court's decision on the matter. Therefore, the Court Orders Mr. Marantidis to show cause why sanctions should not be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

### 3. CERTIFICATE OF CORRECTION PURSUANT TO 35 U.S.C. § 255—FAULT OF THE APPLICANT

It is undisputed that the PTO issued the certificate of correction pursuant to section 255. Defendants argue that the PTO should not have issued the certificate under that section because (1) the alleged mistake is not "of a clerical or typographical nature," (2) the alleged mistake is not "of a minor character," and (3) plaintiff failed to show good faith. Therefore, defendants argue that the certificate is invalid. Furthermore, even if the certificate is valid, defendants argue that the change altered the scope of the patent, and as

such, they are entitled to intervening rights.

According to the statute, there are two separate requirements that must be met in order for the PTO to issue a certificate of correction under section 255.

The first ... concerns the nature, i.e., type, of the mistake for which a correction is sought. The mistake must be:

(1) of a clerical nature,

(2) of a typographical nature, or

(3) a mistake of minor character.

The second ... concerns the nature of the proposed correction. The correction must not involve change which would:

(1) constitute new matter

(2) require reexamination

If the mistake sought to be corrected is not of the type proper for correction by a Certificate of Correction, PTO need not consider whether an applicant's proposed correction would involve new matter or require reexamination.

*In re Arnott,* 19 U.S.P.Q.2d 1049, 1052–54 (Com'r Pat. & Trademarks 1991) (paraphrasing 35 U.S.C. § 255); Donald Chisum, 4 Chisum on Patents, § 11.07[3][b] (1998).

### a. TYPOGRAPHICAL OR CLERICAL

■ The PTO could not have concluded that the error here was a clerical or typographical error. A clerical error, in its purest form, is the error of a "clerk." *See* Random House Webster's College Dictionary, at 245 (1998). A typographical error is defined as "an error in printed or typewritten matter resulting from a mistake in typing or from mechanical failure." *Id.* at 1392. Absent very unique and unusual circumstances, a clerical or typographical error should be manifest from the contents of the file of the patent sought to be corrected. *See In re Arnott,* 19 U.S.P.Q.2d 1049, 1053 (1991). Reference to "parol" evidence beyond the patent file should not be necessary to establish the

existence of a clerical or typographical mistake. *See id.*

█ There is nothing in the patent or its file history which suggest that the reference to "rear walls" is a clerical or typographical error.[4] On the contrary, the file history indicates that the change was intentional. On March 11, 1997, the examiner amended the patent purportedly to positively define the claim over the prior art of record. *See* Morella Decl. Sup. Def.'s Mot. No. 3, Ex. B, at 19 ("Morella Decl. No. 3"). That amendment changed "rear wall" to "rear walls." *See id.* at 22. Furthermore, the reference to "rear walls" is perfectly consistent with the specifications of the '534 patent. As shown in figure 2 (above) of the patent, the firebox indeed has two rear walls (item 11 and 15). *See id.,* Ex. A, at 4. Moreover, the specification identifies the first "rear wall" (referenced as a reflective sheet and identified as item 11) and the second rear wall (item 15) and explains their function—namely, to create multiple air pathways to "reduce heat transmission to surrounding surfaces." *Id.* at 8 (col.4, lns.22–24).

Additionally, Superior never attempted to change that alleged "error" in the patent before it issued. Superior did submit amendments to correct a number of other clerical, typographical, or minor errors prior to the issuance of the patent—but none of which changed the reference to "rear walls." *See id.,* Ex. B, at 25–27. Superior only attempted to change the language of the patent when it became an issue in this lawsuit.

Finally, when the PTO refused to amend the patent pursuant to 35 U.S.C. § 254 (fault of the PTO), it did so because it believed that the patent, including the reference to "rear walls," was printed "in accordance with the record in the Patent and Trademark Office of the application as passed to issue by the examiner." *Id.,* Ex B, at 29. As such, the PTO found no error.

Therefore, according to the file history and the PTO's decision in the 35 U.S.C. § 254 application, the PTO could not have found that the change sought under 35 U.S.C. § 255 was of a clerical or typographical nature. If it did, it was an abuse of discretion. Therefore, the PTO must have concluded that the error was of a "minor character."

**b. CHANGE OF A MINOR CHARACTER—SCOPE OF THE PATENT**

█ Section 255 permits a minor error, when made in good faith, to be corrected. *See Eagle Iron Works v. McLanahan Corp.,* 429 F.2d 1375, 1383 (3d Cir.1970). As such, by its term, the statute permitting the correction of a minor error "does not authorize a broadening of claims." *Id.* In determining whether a patentee broadened the scope of a claim through a certificate of correction under 35 U.S.C. § 255, this Court uses the same test as for reissue claims and reexamination claims. *See Hockerson–Halberstadt, Inc. v. Converse Inc.,* 183 F.3d 1369, 1373–74 (Fed.Cir. 1999). As such, " '[a] claim . . . is broader in scope than the original claim if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent.' " *Id.* at 1374 (quoting *In re Freeman,* 30 F.3d 1459, 1464 (Fed.Cir.1994)).

---

**4.** Plaintiff attempts to introduce evidence which allegedly shows that the examiner who prosecuted the patent agreed that the error was the PTO's fault. *See* Nelson Decl. Exs. Defendants have objected to the introduction of that evidence, and specifically to exhibit E, which is a "specially prepared claim," and exhibit K, which is the declaration of Constantine Marantidis. Defendants' objections are well taken. The Marantidis declaration sets forth an alleged conversation between the patent examiner and Mr. Marantidis. That alleged conversation is inadmissible hearsay. Therefore, defendants' objection is sustained as to paragraphs 4, 6, and 7 of the Marantidis declaration. As to exhibit E, the document itself lacks foundation for its authenticity. Furthermore, Mr. Nelson (the affiant) lays no foundation for the statements he makes in connection with the document. As such, defendants' objection is sustained and the Court disregards exhibit E.

Therefore, the Court must analyze the scope of the claim prior to the amendment and compare it with the scope of the claim subsequent to the amendment. This analysis requires the Court to engage in two claim constructions. Claim construction is the process of giving proper meaning to the claim language. *See Thermalloy, Inc.,* 121 F.3d at 692. "Claim language, after all, defined claim scope." *Id.* (citing cases). Therefore, the language of the claim frames and ultimately resolves all issues of claim interpretation. *See id.* In determining the meaning of disputed claim terms, however, a construing court may consider the written description, the prosecution history, and extrinsic evidence. *See id.* at 692–93 (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir.1995) (en banc), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)). These additional sources provide a context to illuminate the meaning of claim terms. *See id.*

In this case, the Court need not resort to any evidence other than the claim language. It is unquestionable that the term "rear wall" is broader than the term "rear walls." In order to violate a patent which contained the original term (rear walls), an accused device would need to have at least two rear walls. If the patent is enforced as corrected, however, an accused device would need to have only *one* rear wall to infringe the patent. As such, a device with one rear wall as well as a device with two or more walls would infringe the corrected patent. Therefore, the claim, as corrected, contains within its scope a conceivable apparatus which would not have infringed the original patent—namely, a fireplace with only one rear wall. Accordingly, the claim is broader. Because the claim, as corrected, is broader, the change is not the type proper for correction by a certificate of correction. As such, the Court need not consider whether the applicant's proposed correction would involve new matter, re-

quire reexamination, or whether it is in good faith.

■ Having determined that the matter corrected was not of the type proper for correction by a certificate of correction, the Court must find a remedy. According to the court in *Eagle Iron Works,* if there is a change altering the scope of a patent, 35 U.S.C. § 252—which regulates the reissue of patents—controls, so that intervening rights could be achieved. *See Eagle Iron Works,* 429 F.2d at 1383. Therefore, in such a case, a certificate of correction would be the wrong means for obtaining a change. But the court in *Eagle Iron Works* did not squarely address whether the certificate of correction by itself remained valid if the correction changed the scope of the patent.[5] However, decisions in the reexamination context, where the broadening of claims is also prohibited, are instructive. The Federal Circuit has held that if the claims of a patent are in fact broadened through a reexamination proceeding, the broadened claims were altogether invalid. *See Thermalloy, Inc. v. Aavid Engineering, Inc.,* 121 F.3d 691, 692 (Fed.Cir.1997); *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1580 (Fed.Cir. 1995). This conclusion equally applies in the certificate of correction context. As such, the certificate of correction issued on August 17, 1999 by the PTO is invalid.

## B. INFRINGEMENT ANALYSIS

■ Because the certificate of correction is invalid, the Court looks to the original patent language to determine whether the two accused devices infringe the patent. Whether a product or process infringes the properly construed claims of a patent, whether literally or under the doctrine of equivalents, is a question of fact. *See Desper Products, Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1332 (Fed.Cir.1998). Often, the composition of the accused product is undisputed. In such a case, "literal infringement collapses into claim

---

5. The court did not have to address the issue, as it found that the certificate of correction was valid under the statute and therefore retroactively enforceable.

construction—a matter of law—amenable to summary judgment." *Id.* at 1332–33.

 As to literal infringement, plaintiff (through its expert witness Robert Borgeson) admits that both the Majestic unit and the Vermont unit do not have a plurality of rear walls. *See* Morella Decl. No. 3, Ex. D, at 43. Upon review of the undisputed evidence offered by the parties, the Court may not conclude otherwise. As such, there remains no genuine issues of material fact that neither the Majestic nor the Vermont units literally infringe the claim.

As to the doctrine of equivalents, plaintiff (who has the burden on that issue at trial) has not offered one shred of evidence to support recovery on such a basis. Furthermore, plaintiff has cited to no authority, presented no facts, and has made virtually no argument as to the application of that doctrine in this case. As such, there remains no issue of material fact that defendants are not infringing plaintiff's patent pursuant to the doctrine of equivalents.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment of Invalidity of Certificate of Correction and of Intervening Rights is GRANTED and the certificate of correction issued by the PTO on August 17, 1999 for U.S. Patent No. 5,678,-534 is invalid. Accordingly, this case is DISMISSED in its entirety. As such, defendants' second Motion for Summary Judgment of Noninfringement and defendants' Motion for Summary Judgment as to Invalidity of Claim 2 are MOOT. Moreover, plaintiff's Motion for Summary Judgment of Validity and Infringement is MOOT in part (validity) and DENIED in part (infringement). Furthermore, because the Court finds that the July 19, 1999 Marantidis declaration was filed for an improper purpose—namely to delay the Court's decision on the certificate of correction issue—the Court ORDERS Mr. Marantidis to SHOW CAUSE why sanctions should not be imposed pursuant to Rule 11 of the Federal Rules of Civil Procedure. In respect to that OSC, the Court sets the following briefing schedule. Mr. Marantidis shall have until January 31, 2000 to file a brief (not to exceed 25 pages) showing cause as to why sanctions shall not be imposed pursuant to Rule 11. Furthermore, defendants may file an opposition to that brief no later than February 7, 2000. Mr. Marantidis may then file a reply, if needed, no later than February 14, 2000.

**IT IS SO ORDERED.**