**SUPERIOR FIREPLACE COMPANY,**
Plaintiff–Appellant,

v.

**The MAJESTIC PRODUCTS COMPA-NY and Vermont Castings, Inc., De-fendants–Cross Appellants.**

**Nos. 00–1233, 00–1281 and 00–1282.**

United States Court of Appeals,
Federal Circuit.

DECIDED: Nov. 1, 2001.

David A. Dillard, Christie, Parker & Hale, LLP, of Pasadena, CA, argued for plaintiff-appellant. With him on the brief was Craig A. Gelfound.

Michael D. Gannon, Baniak Nicholas Pine & Gannon, of Evanston, IL, argued for defendants-cross appellants. With him on the brief was Michael H. Baniak.

Before MAYER, Chief Judge, LINN and DYK, Circuit Judges.

LINN, Circuit Judge.

Superior Fireplace Co. ("Superior") appeals a final judgment from the United

States District Court for the Central District of California. *Superior Fireplace Co. v. Majestic Prods. Co.,* 92 F.Supp.2d 1001 (C.D.Cal.2000) (judgment). The district court determined, on summary judgment, that Superior's certificate of correction for United States Patent No. 5,678,534 ("'534 patent") is invalid and that the uncorrected '534 patent is not infringed by Majestic Products Co. and Vermont Castings, Inc. (collectively, "Majestic"). *Superior Fireplace Co. v. Majestic Prods. Co.,* 92 F.Supp.2d 1001 (C.D.Cal.2000) ("*Opinion*").

Superior seeks review of the invalidity determination. Superior also seeks review of the district court's: (1) exclusion of a declaration by Superior's patent attorney and a facsimile alleged to be part of the prosecution history of the '534 patent; and (2) denial of a motion to amend judgment or for reconsideration based on the allegedly new evidence of an examiner's questionnaire. Majestic cross appeals, seeking review of the district court's finding that this was not an exceptional case and its decision not to award Majestic attorney fees. We affirm the district court's judgment with respect to Superior's challenges and vacate and remand with respect to Majestic's challenges.

## BACKGROUND

### A. The '534 Patent

The '534 patent relates to gas fireplace technology. Gas fireplaces are generally considered to be attractive and desirable commercial products. However, one disadvantage of fireplaces in general is that they can take up a lot of space. This is particularly disadvantageous for smaller apartments, hotel rooms, etc., in which space is at a premium. Although small gas fireplaces can be made, the smaller models often do not look as good and are, thus, of less commercial value. Additionally, because many gas fireplaces are built into walls or other structures, reducing the size of the fireplace can lead to excessive heating of the structure surrounding the fireplace. Whether the fireplace is small or large, the requirement to have a flue for venting combustion gases is also disadvantageous because of the space required for the flue.

The '534 patent purports to solve at least some of these problems by providing a combination of three features. First, as shown in Figure 2 from the '534 patent, included below, a reflective sheet 11 is provided behind the flame 8 and artificial log F, thus increasing the apparent depth of the fireplace for a better visual appearance. Second, the interior of the fireplace is constructed so as to provide various convection pathways within the fireplace to transfer heat into the room and, thus, reduce heat transfer into the structure surrounding the fireplace. Third, a catalytic converter 9 is provided, thus eliminating the need for a flue and allowing a more visually attractive flame instead of the cleaner burning blue or invisible flames.

Fig. 2

Claim 1 of the '534 patent is the only claim at issue in this appeal and reads as follows:

1. A gas log fireplace comprising in combination:

a housing having a top wall, bottom wall, side walls and a rear wall;

a firebox within the housing comprising a top wall, *rear walls* and side walls, said firebox forming a primary combustion chamber;

a room air plenum comprising a top room air plenum between the top wall of the firebox and the top wall of the housing, a rear room air plenum between the rear wall of the firebox and the rear wall of the housing in communication with the top room air plenum;

an inlet opening for allowing room air to enter the rear room air plenum;

an outlet opening in communication with the top room air plenum for allowing room air and exhaust products in the top room air plenum to be exhausted into a room in which the fireplace is situated;

an intake opening into the firebox for receiving room air into the primary combustion chamber;

a burner within the firebox, at least one artificial log within the firebox adjacent to said burner and means for supporting said at least one log within the firebox;

means for delivering a source of combustible gas to the burner;

an exhaust opening in the top wall of the firebox;

a catalytic converter positioned in the exhaust opening of the firebox and forming a secondary combustion chamber; and

whereby exhaust products from the primary combustion chamber are received by the catalytic converter wherein secondary combustion takes place and the exhaust products from the secondary combustion chamber are received by the

top room air plenum and are mixed with room air received by the rear room air plenum and exhausted into the room in which the fireplace is situated.

'534 patent, col. 5, l. 41—col. 6, l. 32 (emphasis added). The dispute in this appeal focuses on the emphasized term "rear walls," in the firebox limitation above. This plural term was changed to the singular term "rear wall" in Superior's certificate of correction, as explained below in the section entitled Procedural History of Litigation. Before explaining the litigation, however, we document the events that led to the '534 patent being issued with the term "rear walls."

In the course of prosecuting the patent application, Superior submitted an amendment adding a new claim that eventually issued as claim 1. This claim initially recited "rear wall" in the firebox limitation.

On February 14, 1997, Superior representatives met with the examiner and agreed to certain changes to the claims. The changes agreed to during this meeting are set forth in an "Examiner Interview Summary Record." That summary does not show any change to the "rear wall" limitation.

On March 6, 1997, the examiner and a representative for Superior followed up the earlier meeting with a telephonic interview. During that interview the parties discussed a reference that the examiner had discovered subsequent to the February 14 meeting. This interview was also memorialized with an "Examiner Interview Summary Record," mailed on March 11, 1997, in which the examiner stated that the claim in question would be modified "as set forth in the attached examiner's amendment." That amendment shows, among other changes, that "rear wall" was amended to "rear walls." That is the first point chronologically in the prosecution history that shows such a change. A "Notice of Allowability" was also mailed on March 11, 1997, thus indicating that the amended claim—with the revised expression "rear walls"—was allowable.

The examiner's amendment also reminded Superior that "[s]hould the changes and/or additions be unacceptable to applicant, an amendment may be filed." Superior did submit an amendment under 37 C.F.R. § 1.312 ("section 312 amendment") three months later, on June 11, 1997, making at least forty separate changes to the specification. This amendment, however, did not amend the claim term "rear walls," and Superior submitted no further amendment before issuance. Consequently, the '534 patent issued with the term "rear walls" on October 21, 1997. After the patent issued, Superior identified another nine errors and, on August 28, 1998, submitted a "Make-of-Record Letter" noting these errors. The "Make-of-Record Letter" did not list any amendments to the claim term "rear walls."

Superior alleges that the prosecution history does not contain the whole story. According to Superior, prior to the March 6 interview the examiner edited the claim in question and faxed to Superior the edited claim. This edited claim does not appear in the prosecution history. These edits, according to Superior, were made by the examiner not to effect any substantive change but merely to facilitate consideration of the newly discovered reference by showing reference numerals, corresponding to features of the reference, after each of the limitations of the claim in question. According to Superior, however, the faxed, edited claim also changed "rear wall" to "rear walls." Superior asserts that it marked up the faxed, edited copy of the claim to show the amendments that Superior authorized during the March 6 interview. Superior's mark-ups are silent with regard to the change from "rear wall" to "rear walls." That is, the mark-ups do not

delete the "s" in "rear walls" nor question the change in any way. Based on this silence, Superior insinuates that the addition of the "s" to "rear wall" was never authorized.

Although not discussed by Superior, it is clear that the examiner's amendment made additional changes to the claim that are not reflected in Superior's mark-up. Thus, Superior's alleged mark-up was not the final version of the claim, as issued.

### B. Procedural History of Litigation

On March 12, 1998, Superior filed a complaint against Majestic for infringement of the '534 patent. At some time after this, Majestic pointed out that the second limitation of claim 1 recited "rear walls." Superior then proceeded to apply for a certificate of correction from the Patent and Trademark Office ("PTO"), seeking to change the claim term from "rear walls" to "rear wall."

Superior's first request was filed on February 16, 1999, under 35 U.S.C. § 254, which applies only to the correction of mistakes made by the PTO. The PTO denied this request, stating in part that "the patent is printed in accordance with the record in the Patent and Trademark Office of the application as passed to issue by the examiner." Superior then filed a request under 35 U.S.C. § 255, which applies only to the correction of mistakes made by the applicant. The PTO granted this request, issuing a certificate of correction on August 17, 1999. We note that both requests were filed and the certificate was granted less than two years after the '534 patent issued. Accordingly, Superior was within the two-year window for broadening reissues under 35 U.S.C. § 251, had it elected to pursue that route.

The parties filed summary judgment motions and the district court determined that the certificate of correction issued by the PTO was invalid. The district court then construed the original claim language, with the term "rear walls," to require at least two walls. The district court found, and it is not disputed on appeal, that both parties agreed that the accused devices do not contain more than one rear wall and that there can be no literal infringement if the claim is construed to require two or more rear walls. *Opinion*, 92 F.Supp.2d at 1009. The district court further found that Superior had not offered "one shred of evidence," "ha[d] cited to no authority, presented no facts, and ha[d] made virtually no argument" to support recovery under the doctrine of equivalents ("DOE"). *Id.* at 1011. Accordingly, the district court determined that there was no infringement under the DOE. Neither of the noninfringement findings are directly challenged on appeal, nor is the construction of the uncorrected claim. Thus, if we affirm the district court's decision that the certificate is invalid, then noninfringement must follow.

In the course of its proceedings, the district court refused to admit as evidence two documents proffered by Superior. The first document was a declaration by Superior's patent attorney, Marantidis, alleging that the examiner admitted that the change from "rear wall" to "rear walls" was a typographical error made by the examiner. The district court refused the Marantidis declaration on the ground that it was hearsay. *Id.* at 1009 n. 4.

The second document was Superior's marked-up version of the faxed, edited claim. This document was proffered as an exhibit to a declaration of Nelson, an attorney at the same firm as Marantidis. The district court refused to admit the facsimile for lack of foundation. *Id.*

Majestic submitted a motion for attorney fees under 35 U.S.C. § 285. The district court, without oral argument and without issuing an opinion, concluded,

"[a]fter careful consideration, ... that the instant case is not an 'exceptional case' as contemplated by the statute," and denied the motion. *Superior Fireplace Co. v. Majestic Prods. Co.,* No. CV–98–1816 (C.D.Cal. Feb. 22, 2000) (civil minutes) (*"Denial of Attorney Fees "*).

After the summary judgment decision, Superior became aware of a PTO questionnaire entitled "Notice Re: Certificates of Correction," prepared by the PTO in connection with the grant of the certificate of correction under 35 U.S.C. § 255 and 37 C.F.R. § 1.323. The questionnaire is dated June 29, 1999 and is included in the prosecution history. However, Superior avers that it did not become aware of the questionnaire until after the summary judgment decision, presumably because it obtained a copy of the prosecution history before the questionnaire had been prepared.

The questionnaire is a form, and the substantive content consists of six boxes that are checked, three indicating questions requiring a response from an examiner, and three more indicating the yes/no answers provided by the examiner. The first question and answer affirm that the change requested would not "constitute new matter or require reexamination." The second question and answer affirm that the change requested would not "materially affect the scope or meaning of the claims allowed." The third question and answer affirm that the patent should "read as shown in the certificate of correction."

Based on the questionnaire, Superior filed a motion to amend judgment or for reconsideration. Superior alleged that the questionnaire showed that the district court erred, or that the questionnaire at least raised a genuine issue of material fact, regarding whether the change to "rear walls" was a typographical error or of minor character. The district court denied the motion, stating that "even if ob-

tained with due diligence, [the questionnaire] does not add any new or different information from what was already known from the Certificate of Correction," and that the questionnaire did "not contradict any of the Court's conclusions." *Superior Fireplace Co. v. Majestic Prods. Co.,* No. CV–98–1816 (C.D.Cal. Feb. 22, 2000) (civil minutes) (*"Denial of Reconsideration "*).

Superior appeals the invalidity holding, the evidentiary refusals, and the denial of its motion to amend judgment or for reconsideration. Majestic cross appeals the finding that this was not an exceptional case and the decision not to award attorney fees. We have exclusive appellate jurisdiction over the issues appealed. 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. Exclusion of Evidence

■■■ The evidentiary rulings in this case are not unique to our jurisdiction and, accordingly, we review them under the law of the pertinent regional circuit. *Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 1574, 37 USPQ2d 1626, 1631 (Fed.Cir.1996) ("When considering issues which are not unique to our jurisdiction we defer to the law of the regional circuit."). The Ninth Circuit, the pertinent circuit in this case, reviews evidentiary rulings of the type appealed from for an abuse of discretion. *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 810 (9th Cir.1997).

■■ Superior is challenging the exclusion of two documents. As explained earlier, the first is the declaration by Superior's patent attorney, Marantidis. For the following two reasons, we hold that the district court did not abuse its discretion in finding that the declaration was inadmissible hearsay.

First, the statement squarely falls under the definition of hearsay. The declaration

alleges that "Examiner Yeung advised me [Marantidis] that the Certificate of Correction was granted because the error sought to be corrected was a typographical error on his part." This allegation contains "an oral ... assertion," Fed.R.Evid. 801(a), from the examiner, "other than one made ... while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed.R.Evid. 801(c).

Second, we reject Superior's argument that the statement falls under the exception for statements against interest. At a minimum, that exception requires that the statement be "contrary to the declarant's [the examiner's] pecuniary or proprietary interest, or ... tend[ ] to subject the declarant to civil or criminal liability, or ... render invalid a claim by the declarant against another." Fed.R.Evid. 804(b)(3). Superior has presented no persuasive argument that any of these conditions were met.

■ The second document is the marked-up version of the edited claim allegedly faxed to Superior's representative by the examiner and then marked up by Superior's representative. This document was proffered as an exhibit to a declaration of Nelson, an attorney at the same firm as Marantidis. The declaration merely asserts that: "Attached hereto as Exhibit E is a true and correct copy of the Patent Examiner's specially prepared version of the Applicant's Claim 27. The typed text was prepared in advance of the March 6, 1997 telephonic conference between the Patent Examiner and Superior's attorney." The district court stated that "the document itself lacks foundation for its authenticity" and Nelson "lays no foundation for the statements he makes in connection with the document." · *Opinion,* 92 F.Supp.2d at 1009 n. 4.

We find no abuse of discretion. First, the facsimile is not self-authenticating. It was not in the prosecution history, and the facsimile itself does not contain any indication of who prepared it or who made the hand written notes on it. Second, Nelson's declaration lays no foundation for his statements regarding the facsimile. He sets forth no personal knowledge of the facsimile or the hand written notes that were made on it. Further, according to the declaration of the lead attorney in charge of prosecuting the '534 patent, Nelson was not even involved in the prosecution.

### B. Certificate of Correction

#### 1. Standard of Review

■ We review a district court's grant of summary judgment de novo, reapplying the standard applicable at the district court. *Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1301, 50 USPQ2d 1429, 1434 (Fed.Cir.1999) (citing *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994)). Summary judgment is only appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Interpretation of statutes governing the grant of summary judgment present threshold questions of law that are reviewed de novo. *Barton v. Adang,* 162 F.3d 1140, 1144, 49 USPQ2d 1128, 1132 (Fed.Cir.1998); *Madison Galleries, Ltd. v. U.S.,* 870 F.2d 627, 629 (Fed.Cir.1989).

#### 2. Burden of Persuasion

■ The first question we consider is Majestic's burden of persuasion on its challenge to the certificate of correction before the district court. Because Superi-

or's certificate of correction became part of the '534 patent and changed claim language, Majestic's challenge to the certificate amounted to a challenge to the corrected claim itself. 35 U.S.C. § 255 (Supp. V 1999) ("Such patent, together with the certificate, shall have the same effect and operation in law ... as if the same had been originally issued in such corrected form."). Majestic's challenge was, in essential respects, indistinguishable from any other challenge to the validity of corrected claim 1. This is evident from the district court's holding that the corrected claim is null and void for the purposes of this case and all future cases, subject to the present appeal. This result is indistinguishable, for practical purposes, from the fundamental effect of a successful direct validity challenge to a claim. It is true that the invalidation of the certificate of correction resulted in uncorrected claim 1 being restored, whereas in other invalidity contexts there is no such replacement claim. However, this difference does not detract from the fact that in all invalidity contexts, where the challenge is successful, at least one claim of an otherwise valid patent is rendered invalid.

█ Challenges to the validity of claims, whether regularly issued, issued after a reexamination pursuant to 35 U.S.C. §§ 301–307, or issued after a reissue pursuant to 35 U.S.C. §§ 251–252, must meet the clear and convincing standard of persuasion. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 973–74, 1 USPQ2d 1202, 1204 (Fed.Cir.1986). This requirement is based on the presumption of validity.[1] 35 U.S.C. § 282 (Supp. V 1999) ("A patent shall be presumed valid."); *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d

1350, 1359–60, 220 USPQ 763, 770–71 (Fed.Cir.1984). As explained above, the present challenge is a challenge to the validity of the certificate of correction. But since the effect of that challenge in the present case is to challenge the validity of a claim, the clear and convincing standard applicable under our precedent to other validity challenges should also apply to the present challenge to the validity of the certificate of correction.

The district court did not discuss or apply the clear and convincing standard. This might be explained by the court's determination that the Administrative Procedure Act ("APA") applied. The APA provides a variety of standards of appellate review of agency action. 5 U.S.C. § 706 (1994). In addition to a de novo review of legal questions, the APA sets forth a number of different standards including, *inter alia,* "arbitrary, capricious, an abuse of discretion ...", and "unsupported by substantial evidence...." *Id.* On appeal, Majestic urges, albeit only in a footnote, that the APA applies and that the clear and convincing standard is inapposite to cases involving certificates of correction.

As explained above, we find the clear and convincing standard apposite to certificates correcting the language of a claim. Moreover, we conclude that, consistent with our case law on validity challenges generally, the clear and convincing standard should apply to challenges to the validity of certificates correcting the language of a claim. Whether the APA standards of appellate review supplant the clear and convincing evidentiary standard applicable to validity challenges is a separate question. It is also a complex ques-

---

1. Additionally, this court has noted previously that the imposition of this standard is related to the presumption that the PTO does its job properly. *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359, 220 USPQ 763, 770 (Fed.Cir.1984). We observe that the PTO is presumed to have done its job in this case with regard to Superior's certificate of correction.

tion that the parties have not fully briefed. We need not address that question, however, because, as explained later in this opinion, under any of the standards, we would reach the same result and would affirm the district court's decision. Given the importance of this APA issue and its prominence in light of the Supreme Court's decision in *Dickinson v. Zurko*, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143, 50 USPQ2d 1930 (1999), we expect that it will resurface "in a case in which the decision will turn on that [issue], and ... [in which] the parties fully brief the issue." *In re Brana*, 51 F.3d 1560, 1569, 34 USPQ2d 1436, 1444 (Fed.Cir.1995); *In re Napier*, 55 F.3d 610, 614, 34 USPQ2d 1782, 1785 (Fed.Cir.1995) (declining to address the applicability of the APA because the ultimate decision did not turn on that issue). In view of the absence of a thorough explication on this record of the issues presented by the question of the applicability of the APA standard, and our conclusion that a resolution of that question is not dispositive, the question is best left for another day and we decline to reach it.

3. District Court's Section 255 Decision

Section 255, entitled "Certificate of correction of applicant's mistake," provides that:

> Whenever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith, the Director may, upon payment of the required fee, issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination. Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.

35 U.S.C. § 255 (Supp. V 1999).

The district court focused on the initial requirement that the mistake be "of a clerical or typographical nature, or of minor character." 35 U.S.C. § 255. The court addressed these two branches separately.

In construing the phrase "mistake of a clerical or typographical nature" in 35 U.S.C. § 255, the district court followed the PTO's own precedent and required that, "[a]bsent very unique and unusual circumstances, a clerical or typographical error should be manifest from the contents of the file of the patent sought to be corrected." *Opinion*, 92 F.Supp.2d at 1008 (citing *In re Arnott*, 19 USPQ2d 1049, 1053, 1991 WL 326548 (Comm'r Patents & Trademarks 1991)). Once the district court had made this legal determination, the court proceeded to examine the patent and its prosecution history and determined that "nothing ... suggest[ed] that the reference to 'rear walls' is a clerical or typographical error." The district court further determined that the prosecution history actually indicated that the change to "rear walls" was intentional. *Opinion*, 92 F.Supp.2d at 1009. Using its interpretation of the statute, the court then applied the APA's abuse of discretion standard to the PTO's factual determinations and concluded that it would have been an abuse of discretion for the PTO to find that the alleged mistake was either typographical or clerical in nature. *Id.* at 1008–09.

Regarding the second branch, allowing correction of a mistake of minor character, the district court followed the Third Circuit in holding as a matter of law that the statute "does not authorize a broadening of the claims." *Id.* at 1008–09 (quoting *Eagle Iron Works v. McLanahan Corp.*, 429 F.2d

1375, 1383, 166 USPQ 225, 231 (3d Cir. 1970)). The court then proceeded to construe both the original claim and the corrected claim and, based on the resulting legal determinations, concluded that the correction of the alleged mistake in this case did broaden the claims. *Opinion*, 92 F.Supp.2d at 1008. Since the correction had resulted in a broadened claim, the court concluded that the corrected mistake was not of minor character, and thus was not correctable under § 255. *Id.* at 1010. The court's analysis of this second branch involved exclusively legal determinations that were reviewed without deference.

Having determined that neither the first nor the second branch of the first requirement was met, the district court declared that the certificate of correction, and hence corrected claim 1, was invalid. *Opinion,* slip op. at 1010. The district court, accordingly, did not need to address any additional requirements of § 255, such as whether the alleged mistake was "not the fault of the Patent and Trademark Office" and whether "a showing ha[d] been made that such mistake occurred in good faith." 35 U.S.C. § 255.

### 4. Review of "Clerical or Typographical Nature"

#### a.

 Statutory interpretation is a matter of law and we thus review the district court's interpretation of 35 U.S.C. § 255 without deference. *Barton v. Adang,* 162 F.3d 1140, 1144, 49 USPQ2d 1128, 1132 (Fed.Cir.1998). Our task specifically concerns whether a mistake, the correction of which would broaden a claim, can be corrected under § 255 and, if so, under what conditions. This is an issue of first impression.

 "In construing a statute ... we begin by inspecting its language for plain meaning. If the words are unambiguous, no further inquiry is usually re-

quired." *Camargo Correa Metais, S.A. v. United States,* 200 F.3d 771, 773 (Fed.Cir. 1999) (citation omitted). "We also consider not only the bare meaning of the word[s] but also [their] placement and purpose in the statutory scheme." *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 721 (Fed.Cir.1998) (internal quotations omitted); *Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 2482, 150 L.Ed.2d 632 (2001) (stating that "we interpret the words in their context and with a view to their place in the overall statutory scheme") (internal quotations omitted); *Vectra Fitness, Inc. v. TNWK Corp.,* 162 F.3d 1379, 1383, 49 USPQ2d 1144, 1147 (Fed.Cir.1998) ("statutory interpretation is a 'holistic endeavor' that requires consideration of a statutory scheme in its entirety"). In appropriate cases, ambiguity may be resolved by considering the public notice function in interpreting the patent statutes. *Vectra Fitness,* 162 F.3d at 1384, 49 USPQ2d at 1148 ("Moreover, an additional consideration also weighs against the interpretation of the statutory scheme[, involving § 251 and § 253,] for which Vectra argues. The public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims."). We note that neither of the parties has directed us to any legislative history that we should consider.

#### b.

The phrase "clerical or typographical nature" is not explicitly defined in § 255, so we first look to the plain meaning and common understanding of the phrase. A standard dictionary defines "clerical" as relating to an office clerk or office work, and defines "typographical" as relating to the setting of type, printing with type, or the arrangement of matter printed from type. Webster's New World Dictionary of the American Language 116, 646 (David B. Guralnik ed., Warner Books 1982). Thus, clerical or typographical mistakes are gen-

erally understood to include simple mistakes such as obvious misspellings that are immediately apparent. Upon viewing such a misspelling, there is no doubt that a mistake, indeed a clerical or typographical mistake, has occurred.

The parties dispute whether a § 255 clerical or typographical mistake may ever encompass a mistake that, upon correction, would broaden a claim. The common understanding of a clerical or typographical mistake certainly includes mistakes that, upon correction, would either broaden or narrow a claim. Majestic suggests, however, that a claim may only be broadened under the reissue provisions of 35 U.S.C. § 251. We acknowledge that Congress dealt with broadening reissues in detail in § 251 and that our interpretation of § 255 must consider the entire statutory scheme, including § 251. *Tyler*, 121 S.Ct. at 2482 ("we interpret the words in their context and with a view to their place in the overall statutory scheme") (internal quotations omitted); *Fanning, Phillips & Molnar*, 160 F.3d at 721 ("We also consider not only the bare meaning of the word[s] but also [their] placement and purpose in the statutory scheme.") (internal quotations omitted). Although § 255, unlike § 251, does not expressly deal with broadening corrections, the words of § 255 do not preclude broadening corrections. We are hesitant to impose so great a limitation without express indication from the statute. Accordingly, we interpret § 255 to allow broadening corrections of clerical or typographical mistakes.

The parties also dispute whether a § 255 clerical or typographical mistake, the correction of which would broaden a claim, must be evident from the public record. This question arises from the observation that not all clerical or typographical mistakes are immediately apparent, and even where the mistake is apparent, it may not be clear how the mistake should be corrected. This leads to a classification of these typographical mistakes into three categories. Some mistakes are immediately apparent and leave no doubt as to what the mistake is. Examples of such errors include misspellings that leave no doubt as to the word which was intended; "frane" instead of "frame," for example. In contrast, a second category includes those typographical mistakes not apparent to the reader at all; for example, a mistake resulting in another word that is spelled correctly and that reads logically in the context of the sentence. A third category of mistakes includes those where it is apparent that a mistake has been made, but it is unclear what the mistake is. Examples of such mistakes are those that create inconsistent terms, but leave unclear which of the conflicting terms is in error. It is not evident to the reader of the public record how to appropriately correct mistakes of the second and third categories.

To help resolve which, if any, of these three categories of mistakes may be corrected under § 255, we again "consider not only the bare meaning of the word[s] [of § 255] but also [their] placement and purpose in the statutory scheme." *Fanning, Phillips & Molnar*, 160 F.3d at 721. The statutory scheme here encompasses 35 U.S.C. §§ 251–256, which govern the amendment and correction of patents. We believe that §§ 251 and 252 are of particular relevance in the statutory scheme, since they deal explicitly with post-issuance amendments that may broaden claim scope. We now address these provisions in more detail.

Section 251 addresses the correction of an "error" and it is understood that corrections under § 251 can result in the broadening of a claim. 35 U.S.C. § 251 (1994 & Supp. V 1999) (allowing correction of an error in which "the patentee claim[ed] ... less than he had a right to claim"). The

patentee's right to broaden a claim is not absolute, however. First, § 251 requires that the broadened claim be supported by the original specification. *Id.* (allowing a reissue only "for the invention disclosed in the original patent"). Second, § 251 precludes a patentee from applying for a broadening reissue more than two years after a patent has issued. 35 U.S.C. § 251 (1994) ("No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."). Third, and most important for our analysis, Congress further protected the public by providing intervening rights for the public with respect to claims that were broadened under § 251. 35 U.S.C. § 252 (Supp. V 1999) (providing intervening rights); *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 829–30, 221 USPQ 568, 576–77 (Fed.Cir.1984) (discussing the intervening rights of § 252).

This statutory scheme reveals Congress' concern for public notice and for protecting the public from the unanticipated broadening of a claim. Section 251 itself provides only minimal notice for broadening reissues, requiring simply that the original specification support the broadened claim. Such a minimal requirement is also implicit in § 255's requirement that reexamination not be required. But Congress displayed a greater concern for public notice in §§ 251 and 252 by insulating the public from this lack of effective notice through the provision of, first, a two-year limit on broadening reissues and, second, intervening rights. We are mindful that our interpretation of § 255 must not frustrate Congress' objectives in § 251 and § 252. *See Vectra Fitness,* 162 F.3d at 1384, 49 USPQ2d at 1148 (interpreting § 253 in light of § 251, so as to ensure that the notice function of § 251 was not frustrated, stating that "after the two-year window for broadening reissues, the public

should be able to rely on the scope of non-disclaimed claims").

Having already determined that broadening corrections are encompassed in § 255, at least in certain circumstances, it is here that we place the weight of § 251 and § 252. Sections 251 and 252 evince the clear intent of Congress to protect the public against the unanticipated broadening of a claim after the grant of the patent by the PTO. It would be inconsistent with that objective to interpret § 255 to allow a patentee to broaden a claim due to the correction of a clerical or typographical mistake that the public could not discern from the public file and for which the public therefore had no effective notice. Such a broadening correction would leave the public without effective notice, without the constraint of a two-year time bar, and without the hope of intervening rights.

This court has previously noted the propriety of independently considering the public notice function in interpreting the patent statutes. *Vectra Fitness,* 162 F.3d at 1384, 49 USPQ2d at 1148 ("Moreover, an additional consideration also weighs against the interpretation of the statutory scheme[, involving § 251 and § 253,] for which Vectra argues. The public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims."). Both the Supreme Court and this court have highlighted the importance of the notice function of patent claims. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1871 (1997) (discussing the impact of the doctrine of equivalents on "the definitional and public-notice functions of the statutory claiming requirement"); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 234 F.3d 558, 575, 56 USPQ2d 1865, 1877 (Fed.Cir.2000) (en banc) (stating that "the notice function of patent claims has

become paramount"), *cert. granted,* —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001) (No. 00–1543). Placing due weight on the public notice function of patent claims suggests that we should interpret § 255 to allow a broadening correction of a typographical error only where it is clearly evident from the specification, drawings, and prosecution history how the error should appropriately be corrected. Such an interpretation of § 255 insures that the public is provided with notice as to the scope of the claims. *Cf. Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1348, 58 USPQ2d 1737, 1741 (Fed.Cir.2001) (applying a similar standard to the identification of mistakes in the prosecution history, the appropriate correction of which is both clear and affects claim scope, stating that "[a]n error in the prosecution record must be viewed as are errors in documents in general; that is, would it have been *apparent* to the interested reader that an error was made, such that it would be unfair to enforce the error" (emphasis added)).

Superior argues that § 255 should not be held to require the appropriate correction of a clerical or typographical mistake to be evident from the intrinsic record even when that correction will broaden a claim. Superior notes that Congress explicitly required that a mistake be evident from the records of the PTO in § 254, which deals with mistakes attributable to the PTO as opposed to the applicant, and that such an explicit requirement is not present in § 255. Superior concludes therefrom that § 255 should not be interpreted to require the correction of the mistake to be evident from the specification, drawings, and prosecution history. Section 254 is, of course, part of the statutory context we must consider in interpreting § 255. Superior's observation on the textual difference between these two sections is correct and can be argued to support an inference that Congress did not intend to restrict § 255. However, such an inference cannot override our obligation to interpret § 255 to comport not only with § 254, but with the overall statutory scheme—encompassing and embodied particularly in § 251 and § 252—protecting the public against the unanticipated broadening of a claim and giving proper credence to the public notice function. For these reasons, despite the fact that § 255 does not explicitly reference the prosecution history, we deem it necessary to interpret this statutory section to contain this implicit, extra-textual requirement.

■ The cases cited by the parties are not controlling and one of them is not on point. In *Arnott,* the PTO expressed its view by stating that "[a]bsent very unique and unusual circumstances, a clerical or typographical error should be manifest from the contents of the file of the patent sought to be corrected." 19 USPQ2d at 1053. We agree with the PTO, other than to note that we find no cause to provide for an exception for "unique and unusual circumstances" when a claim is broadened. In *Eagle Iron Works,* the Third Circuit stated that § 255 "does not authorize a broadening of the claims." 429 F.2d at 1383. The Third Circuit, thus, marked out an even brighter line than we have on providing notice to the public for possible broadening corrections—precluding such broadening altogether. However, decisions of the regional circuits on issues within our exclusive jurisdiction are not binding on this court. *South Corp. v. United States,* 690 F.2d 1368, 1370, 215 USPQ 657, 658 (Fed.Cir.1982) (en banc). The parties also discuss *Brandt, Inc. v. Crane,* 558 F.Supp. 1339 (N.D.Ill.1983). However, *Brandt* did not interpret § 255 and is therefore not on point. *Brandt* decided that a claim was not invalid under 35 U.S.C. § 112, but the district court was not called upon to address the validity of

the § 255 certificate correcting that claim or to interpret § 255. *Id.* at 1341–42.

The dissent questions the need to construe § 255 in this manner, citing our holding in *Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 56 USPQ2d 1161 (Fed.Cir.2000). In *Southwest*, we held that a certificate of correction issued under § 254 is valid only for claims arising after the certificate issued. *Id.* at 1294, 56 USPQ2d at 1172. However, the holding in *Southwest* does not relieve us of our duty of interpreting § 255 in its statutory context. Reissued patent claims that are not substantially identical to the original patent claims also are valid only for the trial of actions for causes arising after the issue of the reissued patent claims. 35 U.S.C. § 252. Despite this, Congress provided a mechanism for protecting the public from unanticipated claim broadening via the two-year period and intervening rights of 35 U.S.C. §§ 251 and 252. This indicates that simply making corrected claims applicable only to after-arising causes of action is in itself insufficient to provide the requisite public notice.

Furthermore, the *Southwest* court itself was concerned with placing the risk inherent in unanticipated broadening where it belongs: on the patentee that has availed himself of the patent system, not on the public that is entitled to rely upon the public record of the patent. "[I]t does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors that require the issuance of a certificate of correction." *Southwest Software*, 226 F.3d at 1296, 56 USPQ2d at 1173.

We have considered Superior's other arguments, but do not find them persuasive. Accordingly, we interpret § 255 to require that a broadening correction of a clerical or typographical error be allowed only where it is clearly evident from the specification, drawings, and prosecution history how the error should appropriately be corrected.

### c.

We now review the district court's summary judgment decision that the alleged "rear walls" mistake was not of a clerical or typographical nature. Applying the clear and convincing evidence standard to this validity challenge, we must affirm the district court's holding if we find the absence of a genuine issue that the appropriate correction of the alleged "rear walls" mistake was not clearly evident from the intrinsic record. The intrinsic record, that is, the public record, consists of the original and corrected claims, the written description and drawings, and the prosecution history. We address these in turn.

The claim language in question recites "a firebox within the housing comprising a top wall, rear walls and side walls." '534 patent, col. 5, ll. 44–45 (uncorrected claim 1). There is no grammatical error that suggests a mistake. The next limitation in the claim, however, refers to "the rear wall of the firebox." '534 patent, col. 6, ll. 3–4 (uncorrected claim 1). Because that limitation refers to rear wall in the singular, with the definite article "the," it does not agree with the earlier reference to rear walls in the plural. One of these limitations contains a mistake, but the claim does not indicate which is mistaken. To help resolve this question, we consider Figure 2 in conjunction with the written description.

The written description and drawings are consistent with either there being two rear walls or only one rear wall. The former interpretation, that there are two rear walls, is suggested most strongly by the commonality between sheet 11 and rear wall 15, which commonality suggests

that sheet 11 should be considered to be a second rear wall. Sheet 11 and rear wall 15 are common in terms of size, placement, and function. Regarding size, sheet 11 has a height, shown in Figure 2, that is the same as rear wall 15 and a width that is "substantially commensurate with a back of the heater casing 7." '534 patent, Figure 2 and col. 3, ll. 44–45. Regarding placement, sheet 11 is placed toward the rear of the firebox, being "spaced rearwardly from the burner housing 2." '534 patent, Figure 2 and col. 3, ll. 50–51. Regarding function, sheet 11 and rear wall 15 operate together to provide three air pathways: one between burner housing 2 and sheet 11, a second between sheet 11 and rear wall 15, and a third between rear wall 15 and outer casing 17. '534 patent, col. 3, ll. 50–62 and col. 4, ll. 11–24. This interpretation is further reinforced by the fact that there is no limitation in the claims of the '534 patent which clearly corresponds to the sheet 11; the only possible corresponding limitation is the "rear walls" limitation of uncorrected claim 1. A reader of the patent might well conclude, given the structural similarity described above, that sheet 11 and rear wall 15 together correspond to the "rear walls" limitation.

The dissent notes that the specification contains a reference to "the firebox rear wall 15" and characterizes this as "strongly support[ing]" its view that only a single rear wall is disclosed. We believe that the dissent reads too much into this use of the definite article "the" in this phrase. The phrase simply notes that the one wall numbered "15" is a "firebox rear wall." Thus, even if one were to accept the proposition that use of the definite article "the" signals the presence of only a single "firebox rear wall 15," there is nothing in that phrase that precludes sheet 11 from being characterized in a claim as an additional firebox rear wall. To the contrary, the written description and drawing, as noted above, support the characterization of sheet 11,

placed as it is at the rear of the firebox, as a second firebox rear wall.

On the other hand, the interpretation that there is only one rear wall is suggested by the fact that the written description defines reference numeral 11 in Figure 2 as a reflective sheet and defines reference numeral 15 as a rear wall of the firebox. The use of separate names in the written description and the use of only one of those names, rear wall, in the claims, suggest that the sheet 11 is not a rear wall 15.

Looking to the prosecution history, we take note of two key facts. First, the examiner changed "rear wall" to "rear walls" in an examiner's amendment after a telephonic interview that was scheduled for the purpose of discussing prior art. The clear inference is that the examiner and the patentee agreed that such a change was necessary to overcome the prior art. That inference is buttressed by the fact that Superior did not object to the change, even though the examiner's amendment itself reminded Superior of its right to do so. Second, any suggestion that Superior simply did not review the patent as allowed and issued, thus explaining Superior's failure to object to the examiner's amendment, is negated by Superior's section 312 amendment and Make–of–Record Letter, as well as by the critical importance of reviewing claims. *Cf. Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1296, 56 USPQ2d 1161, 1173 (Fed. Cir.2000) (stating that "it does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors that require the issuance of a certificate of correction"). These portions of the prosecution history appear to dispel the possibility that the change from "rear wall" to "rear walls" was a mistake.

In conclusion, the claim limitation in question is itself syntactically correct and

on its face raises no question of a mistake. The rest of the claim, the other claims and the written description and drawings do not make it clearly evident that the "rear walls" limitation is a mistake and should have been "rear wall." Furthermore, the prosecution history provides compelling evidence that "rear walls" was the correct phrase. Thus, the requested correction of the alleged mistake was not apparent from the specification, drawings, and prosecution history. The alleged mistake is, therefore, not a clerical or typographical mistake correctable under § 255. Were we to apply the APA's standard of review, we would agree with the district court that the PTO's decision that the change to "rear walls" was of a clerical or typographical nature correctable under § 255 was an abuse of discretion.[2] *Opinion*, 92 F.Supp.2d at 1009.

### 5. Review of "Minor Character"

■ We begin by interpreting the § 255 phrase "minor character." Again, as a matter of statutory interpretation, we review the district court's interpretation without deference. *Barton v. Adang*, 162 F.3d 1140, 1144, 49 USPQ2d 1128, 1132 (Fed.Cir.1998). This phrase is not explicitly defined in the statute, and so we begin with the plain meaning of the phrase. *Camargo Correa Metais, S.A. v. United States*, 200 F.3d 771, 773 (Fed.Cir.1999). "Minor" is commonly defined as "lesser in importance ... [or] seriousness...." The American Heritage College Dictionary 869 (3d ed.1993). The scope of a patent claim is its very essence, and that with which the patentee and any competitors are most concerned. A mistake that, if corrected, would broaden the scope of a claim must thus be viewed as highly important and

thus cannot be a mistake of "minor character." Accordingly, based on the plain meaning of the statutory language, we interpret "a mistake of ... minor character" to exclude mistakes that broaden a claim.

In the relevant claim limitation, the corrected claim recites only "rear wall" (singular), whereas the uncorrected claim recited "rear walls" (plural). The district court held, and Superior does not dispute, that the corrected claim is broader than the uncorrected claim, if both are properly construed in accordance with our case law. Citing *Brandt*, which is not controlling on this court, Superior invites us to compare the corrected claim not to the uncorrected claim but to that which was "agreed to," or "intended," by the patentee and the examiner. Superior asserts that the examiner and the patentee both understood that the claim only required a single rear wall, and that this intent should govern our analysis.

■ We decline Superior's invitation and refer to our own case law. "No inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit. The subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985, 34 USPQ2d 1321, 1334 (Fed.Cir.1995). Thus, Superior's suggestion that we compare claim scope by considering what was "intended" by the parties, rather than by construing the claims for what they actually recite, is completely without merit.

**2.** "Because [the arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law] standard is generally considered to be the most deferential of the APA standards of review," we need not determine whether this or the substantial evidence standard would apply. *In re Gartside*, 203 F.3d 1305, 1312, 53 USPQ2d 1769, 1773 (Fed.Cir. 2000).

The district court's claim construction, with which we agree, found that the corrected claim was broader than the uncorrected claim. We have interpreted the phrase "mistake . . . of minor character" of 35 U.S.C. § 255 to exclude those mistakes, the correction of which would broaden a claim. Since this was such a mistake, we conclude as a matter of law that it was not correctable by a certificate of correction under 35 U.S.C. § 255.

### 6. Conclusion for Certificate of Correction

■■■ We hold that a mistake in a claim the correction of which broadens the scope of coverage of that claim and is not clearly evident from the specification, drawings, and prosecution history is not a "mistake of a clerical or typographical nature" subject to correction under 35 U.S.C. § 255. We also hold that a mistake the correction of which broadens a claim is not a "mistake of . . . . minor character" subject to correction under 35 U.S.C. § 255. Applying these interpretations, we conclude that the correction effected by Superior, the effect of which broadens claim 1, and is not clearly evident from the specification, drawings, and prosecution history, was not correctable under 35 U.S.C. § 255. Accordingly, we hold that the certificate of correction is invalid.

### C. Denial of Motion

■■■ As with the evidentiary rulings, we review for an abuse of discretion the district court's denial of Superior's motion to amend judgment or for reconsideration. *Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574, 37 USPQ2d 1626, 1631 (Fed.Cir.1996) ("When considering issues which are not unique to our jurisdiction we defer to the law of the regional circuit."); *In re Stein*, 197 F.3d 421, 424 (9th Cir.2000). As stated earlier, the district court denied the motion, stating that "even if obtained with due dili-

gence, [the questionnaire] does not add any new or different information from what was already known from the Certificate of Correction." *Denial of Reconsideration*, slip op. at 1. For the reasons articulated below, we find no abuse of discretion.

The questionnaire merely reflects the conclusions that the PTO must have come to in order to grant the certificate of correction. The district court presumed that the PTO had come to these conclusions and proceeded to find that such conclusions were in error.

Superior draws attention to the district court's statement that "the PTO must have concluded that the error was of a 'minor character.'" *Opinion*, 92 F.Supp.2d at 1009–10. Superior then argues that the questionnaire shows that statement to be false. This argument borders on the frivolous. The context of the district court's statement leaves absolutely no doubt that it is a statement of proposition, made in transitioning to a discussion of whether the alleged error is of minor character. *Id.* The district court is, in effect, stating that because the alleged error is not typographical or clerical, and because the PTO granted the certificate, we must assume that the PTO found the alleged error to be of minor character. The district court opinion then immediately begins explaining why the alleged error is not of minor character.

### D. Exceptional Case and Attorney Fees

■■■ "The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is a factual determination reviewed for clear error. The subsequent determination of whether attorney fees are appropriate is reviewed for an abuse of discretion." *Tegal Corp. v. Tokyo Electron Am., Inc.*, 257 F.3d 1331, 1351, 59 USPQ2d 1385, 1400

(Fed.Cir.2001) (internal quotations, ellipsis, and citation omitted).

As we stated earlier, the district court, without oral argument and without issuing an opinion, concluded, "[a]fter careful consideration, ... that the instant case is not an 'exceptional case' as contemplated by the statute." *Denial of Attorney Fees,* slip op. at 1. Whether or not a district court ultimately finds a case exceptional on motion for attorney fees, it is important that the court provide some indication of the reasoning underlying its decision to provide a basis for meaningful appellate review. Here, the district court's failure to provide any findings or reasoning prevents us from reviewing its decision. Accordingly, we are constrained to vacate and remand on the issue of exceptional case and attorney fees. *See Gechter v. Davidson,* 116 F.3d 1454, 1457, 43 USPQ2d 1030, 1033 (Fed.Cir.1997) (stating, in the context of an appeal from a PTO interference decision, that "[w]hen the opinion explaining the decision lacks adequate fact findings, meaningful review is not possible, frustrating the very purpose of appellate review"); *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1276, 35 USPQ2d 1035, 1040 (Fed.Cir.1995) (vacating because "[w]ithout more detailed findings and reasoning, we cannot evaluate the court's damage award"); *Atl. Thermoplastics Co., Inc. v. Faytex Corp.,* 970 F.2d 834, 837, 23 USPQ2d 1481, 1483 (Fed.Cir.1992) (vacating because "[t]he district court did not provide any findings of fact or analysis for its [on-sale bar] conclusion").

■ We note that this is not a case in which the record, at least the record on appeal, compels a denial of attorney fees. It must be remembered that at the time the complaint was filed, the claims included the "rear walls" limitation and no request had been filed with the PTO to correct the claim under either § 254 or § 255. As Majestic argues, there are serious and open questions as to whether Superior ever had a good faith belief in its claim that Majestic infringed the '534 patent, given that the "rear walls" limitation was present in the claims when the complaint was filed and given that no action had been taken up to that time either to seek correction as a matter of public record or to advise the court of the presence of the alleged mistake. *Hoffmann–La Roche Inc. v. Invamed Inc.,* 213 F.3d 1359, 1365–66, 54 USPQ2d 1846, 1850 (Fed.Cir. 2000) (in the context of a § 285 finding that a case was not exceptional, noting that "Torpharm has not presented any facts showing that when Roche and Syntex filed their complaint, they had reason to believe that their patents did not cover the processes used to make Torpharm's generic drug"). Other concepts related to good faith, such as unjustified or bad faith litigation and frivolous lawsuits, are also grounds for finding a case exceptional. *Id.* at 1365, 54 USPQ2d at 1850 (stating, in the context of an accused infringer seeking an exceptional finding and an award of attorney fees, that "[a]mong the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit"); *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1481–82, 45 USPQ2d 1429, 1436 (Fed.Cir.1998) (stating, in a case in which the accused infringer sought an exceptional finding and attorney fees, that "[f]indings of exceptional case have been based on a variety of factors; for example, willful or intentional infringement, inequitable conduct ..., vexatious or unjustified litigation, or other misfeasant behavior"); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050–51, 22 USPQ2d 1577, 1579–80 (Fed.Cir. 1992) ("In the case of awards to prevailing accused infringers ... 'exceptional cases'

are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent.").

█ A finding that this case was exceptional would not, of course, end the inquiry. The subsequent decision to award attorney fees, *vel non*, is discretionary and "permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197, 37 USPQ2d 1685, 1693 (Fed.Cir.1996); *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543, 16 USPQ2d 1622, 1626 (Fed.Cir.1990) (providing a similar list).

On remand, the district court should make the necessary findings to allow our review. This should include a determination of what pre-filing preparation, if any, was done by Superior. From the record on appeal, it is unclear if Superior inspected the allegedly infringing products, prepared claim charts, construed the claims at issue, or even read those claims. We are perplexed by Superior's apparent position that, at the time it filed this lawsuit, it was ignorant of the fact that claim 1 recited "rear walls." *Cf. View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986, 54 USPQ2d 1179, 1183 (Fed.Cir.2000) (stating, in a Rule 11 context, also in the Ninth Circuit, that a party alleging infringement must, "at a bare minimum, apply the claims ... to an accused device and conclude that there is a reasonable basis for a finding of infringement").

## CONCLUSION

Because the correction of the alleged mistake under § 255 broadened a claim and was not clearly evident from the specification, drawings, and prosecution history,

we affirm the district court's summary judgment that Superior's certificate of correction is invalid. We also affirm the district court's evidentiary preclusions and denial of Superior's motion to amend judgment or for reconsideration. However, we vacate and remand, for proceedings consistent with this opinion, the district court's finding that this is not an exceptional case and its decision not to award Majestic attorney fees.

*AFFIRMED–IN–PART, VACATED–IN–PART AND REMANDED.*

DYK, Circuit Judge, dissenting.

I agree with the majority that the PTO's action in granting the certificate of correction is entitled to a presumption of validity that must be overcome with clear and convincing evidence. I also agree that the PTO is authorized, under 35 U.S.C. § 255, to issue certificates of correction for typographical or clerical mistakes that broaden the scope of the patent, for I share the majority's hesitancy to interpret section 255 to prohibit broadening corrections "without express indication from the statute." *Ante* at 1370. However, I part company with the majority when it reads into the statute a requirement that the error be apparent from the prosecution history, a requirement which is equally lacking an "express indication" in the statute. I accordingly dissent from the majority's holding that the certificate of correction is invalid and from the majority's decision affirming the grant of summary judgment of non-infringement.

As the majority admits, the text of section 255 does not require that the error be apparent from the prosecution history. It is not our task to read into the statute an "implicit, extra-textual requirement," *ante* at 1372, because we believe that it represents good policy. As the Supreme Court noted in *Artuz v. Bennett*, 531 U.S. 4, 10, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000)

"[w]hatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them." *See also Badaracco v. Commissioner,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."). Indeed, it is perfectly clear that Congress did not intend to require in section 255 that mistakes be evident from the prosecution history.

As the majority admits, Congress explicitly imposed such a requirement in section 254. Section 254 states that "[w]henever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, *is clearly disclosed by the records of the Office,* the Director may issue a certificate of correction...." 35 U.S.C. § 254 (Emphasis added.). Because such language is absent from section 255, the inference is inescapable that Congress did not intend to impose such a requirement in section 255. Section 255 was enacted in 1952 at the very same time section 254 was re-enacted, and both sections appear in the Patent Act of 1952, Pub.L. No. 82–593, 66 Stat. 792.[1] Under such circumstances, the Supreme Court has made clear that a section that omits language appearing in a companion section should not be construed to include the language. The Court concluded in *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and pur-

posely in the disparate inclusion or exclusion." *See also Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2124–25, 150 L.Ed.2d 251 (2001). There is nothing here to overcome that presumption, and the legislative history of the 1952 Act is silent on the reason for the textual difference in the two sections. S.Rep. No. 82–1979, at 27 (1952), *reprinted in* U.S.C.C.A.N. 2394, 2420.

The majority states that reading into section 255 an extra-textual requirement that mistakes be evident from the prosecution history is consistent with the "overall statutory scheme," articulated in §§ 251–256. I agree with the majority that when interpreting a statute we should "interpret the *words* in their context and with a view to their place in the overall statutory scheme" *Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 2482, 150 L.Ed.2d 632 (2001), and that we should "consider not only the bare meaning of the word[s] but also [their] placement and purpose in the statutory scheme," *Fanning, Phillips & Molnar v. West,* 160 F.3d 717, 721 (Fed.Cir. 1998). However, *Tyler* and *Fanning, Phillips & Molnar* discuss how to interpret the meaning of an individual, ambiguous word that appears in the text of a statute. Those cases hardly suggest that we should read entirely new clauses into a statute because we think that that approach better fits the overall design.

Even under the majority's interpretation, I fail to see why reading into section 255 a requirement that errors be "clearly disclosed in the records of the Office" serves the policies of the statute. Section 254 is designed to deal with PTO mistakes while section 255 is designed to deal with

---

1. Section 254 was first enacted by the Patent Act of Mar. 4, 1925, ch. 535, 43 Stat. 1268 (1925), "to save time and money and also promote efficiency in the operation of the Patent Office" because, when errors are detected that "are clearly clerical errors ... the certificate obviates the necessity of reprinting

the entire patent." 65 Cong. Rec. 6,842–43 (1924) (statement of Rep. Lanham). The statute "saves expense. It saves the reprinting of patents and allows the offering of these amended patents, with these certificates in them, in evidence rather than requiring a reprint of the entire patent." *Id.* at 6,843.

mistakes by the applicant. It seems highly unlikely that Congress intended to require that the prosecution history disclose the applicant's own mistakes. If a mistake were made by the applicant and went undetected by the PTO (as apparently occurred here), it would often not appear in the prosecution history.

The majority's concern that the prosecution history must give notice of the mistake because "[t]he public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims," *ante* at 1369 (quoting *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383, 49 USPQ2d 1144, 1148 (Fed.Cir. 1998)), is misplaced. The majority expresses concern that section 255, unlike section 252, provides on its face no protection from infringement liability for intervening rights. However, we recently (and correctly) held that a certificate of correction is valid only for claims arising after the certificate issued, as the language of the statute makes clear. *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1294, 56 USPQ2d 1161, 1172 (Fed. Cir.2000).[2] We offered the example of a patent issuing with a single claim that was clearly invalid due to a mistake, and stated that:

> Until the PTO issues a certificate of correction ..., such a claim would appear invalid to the public, and reasonable competitors would be justified in conducting their affairs accordingly. In such a case, where the claim is invalid on its face without the certificate of correction, it strikes us as an illogical result to allow the patent holder, once the certificate of correction has issued, to sue an alleged infringer for activities that occurred before the issuance of the certificate of correction.

*Id.* at 1295–96. Thus, a certificate of correction is valid only for acts occurring after the certificate of correction issues. Because *Southwest* requires that the certificate of correction be treated as valid only for acts occurring after the certificate issues, the public's reliance on the public record is protected, regardless of whether the mistake is evident in the original prosecution history.

The majority cites the two-year time bar for obtaining a broadening reissue under section 251 and notes that no similar time limit applies to broadening certificates under section 255. *Ante* at 1371–72. But this does not support imposing a requirement in section 255 that an applicant's mistakes be evident from the prosecution history. In any event the certificate of correction here was issued on August 17, 1999, less than two years after the original patent issued October 21, 1997.

Finally, in areas such as this, we should be reluctant to second guess the PTO. The PTO, not the district courts or this court, is in the best position to know whether a typographical or clerical error has occurred. The presumption of validity and the clear and convincing evidence standard were crafted, in part, because we recognized that we cannot know exactly what occurred during prosecution, and we appropriately assume that the PTO has done its job properly, absent clear and convincing evidence to the contrary. *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569, 40 USPQ2d 1481, 1485 (Fed.Cir.1996) ("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d

---

**2.** While *Southwest* involved certificates issued under section 254, its holding applies equally well to certificates issued under section 255.

1030 (1997). The same presumption applies to certificates of correction. As we recently said in *Winbond Electronics Corp. v. International Trade Commission,* 262 F.3d 1363, 1371, 60 USPQ2d 1029, 1034 (Fed.Cir.2001), "[t]he Patent Act accords each patent a presumption of validity.... A Certificate of Correction extends that presumption to the corrected document." While the majority purports to apply this standard, in fact it pays little or no actual deference to the PTO's determination that a qualifying clerical or typographical mistake occurred.

Even under the majority's statutory interpretation, there is ample evidence in the patent and its prosecution history here to support the conclusion that such a mistake occurred, and certainly no clear and convincing evidence that it did not. In the course of prosecution, Superior submitted an amendment adding a claim that eventually matured into claim 1 of the '534 patent. It claimed a fireplace that included a housing and "a firebox within the housing comprising a top wall, *rear wall* and side walls...." (Emphasis added.) On March 11, 1997, after a telephone interview between the examiner and Superior's representative on March 6, 1997, in which prior art was discussed, "rear wall" was changed to "rear walls" in the claim by an examiner's amendment. Accordingly, the patent originally issued on October 21, 1997, claiming a fireplace that included a housing and "a firebox within the housing comprising a top wall, *rear walls* and side walls ...." '534 patent, col. 5, ll. 44–45 (Emphasis added.). The PTO issued a certificate of correction, pursuant to section 255, on August 17, 1999, changing "rear walls" to "rear wall."

The patent itself strongly supports the validity of the certificate of correction.

The written description stated: "[i]n the *preferred form* of the invention, *the* firebox rear wall 15 ...." (emphases added). '534 patent, col. 4, ll. 11–12. By using the definite article, the patentee clearly indicated that the preferred embodiment of invention included a firebox having a *single* rear wall. We have held that a claim construction that does not encompass the preferred embodiment is "rarely, if ever, correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed.Cir.1996). So too a claim which is written to exclude the preferred embodiment is likely to be an error.

The majority notes that the examiner's amendment changed "rear wall" to "rear walls" after a telephonic interview between Superior's representative and the examiner to discuss prior art. From this, the majority draws an inference that the amendment was made in a deliberate attempt by the applicant to overcome prior art and was not a clerical or typographical error. But the examiner's amendment also added, at the same time, to the same claim, the claim limitation "a rear room air plenum between *the rear wall* of the firebox ...." '534 patent, col. 6, ll. 3–4 (Emphasis added.). The majority hypothesizes that this language was an error. *Ante* at 1374. But there is simply no reason to believe that the "rear wall" reference was an error, as opposed to the "rear walls" reference. In any event, the existence of these inconsistencies sharply argues against the majority's inference of a deliberate change. Thus, the prosecution history supports the view that the change from "rear wall" to "rear walls" was inadvertent and was a clerical or typographical mistake.[3] Certainly, Majestic has not pre-

---

3. Because Majestic did not present clear and convincing evidence that the mistake was not clerical or typographical in nature, I would

not reach the issue of whether the mistake was "of minor character" under section 255.

sented clear and convincing evidence that this was not a mistake, much less clear and convincing evidence that the PTO made an error in issuing the certificate of correction.

Finally, the court holds that the district court erred in summarily denying Masjestic's motion for attorneys' fees without further explanation. I disagree with the majority that the district court should be required to make findings and establish a record to allow our review of its denial of defendant's motion for attorneys' fees. District courts already are overworked and we need not add to their burden. In *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1583, 27 USPQ2d 1836, 1845 (Fed.Cir.1993), although the "district court issued no factual findings as to whether [it] was an 'exceptional case'," we affirmed a district court's denial of the accused infringer's motion for attorneys' fees because the record provided a sufficient basis for us to review the district court's decision. The same is true here.

The issue on which the majority invalidates the certificate of correction is an issue of first impression, and is certainly a close one (even if one assumes that the majority is correct). Majestic has also made no claim, much less an evidentiary showing, that Superior filed the original infringement action in bad faith. In *Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050–51, 22 USPQ2d 1577, 1580–81 (Fed.Cir.1992), we affirmed the district court's denial of attorneys' fees and explained that:

> [i]n the case of awards to prevailing accused infringers ... 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee.... Thus, [the accused infringer] bears the burden of establishing that [the patentee] pursued this litigation in bad faith

and that the district court clearly erred in failing to so find.

Superior may have been negligent in not carefully reviewing the patent before filing the action, but this negligence is a far cry from the gross failure involved in the single case cited by the majority in which sanctions were imposed under Fed. R.Civ.P. 11. *See View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 982–84, 54 USPQ2d 1179, 1180–82 (Fed.Cir. 2000) (affirming district court's imposition of sanctions where patentee had filed an infringement counterclaim without having seen the accused infringer's products, and where the patentee admitted "that it had no factual basis for its counterclaims").

The majority states, "this is not a case in which the record ... compels a denial of attorney fees," *ante* at 1377, but neither is this a case in which the record compels us to grant attorneys' fees. In such circumstances, given the highly deferential abuse-of-discretion standard of review under which we review the district court's finding regarding attorneys' fees, a remand is quite unnecessary. On the record in this case, the district court did not clearly err in finding that this was not an exceptional case and did not abuse its discretion in denying Majestic's motion for attorneys' fees.

I note that none of the cases on which the majority relies for its conclusion that judicial findings are compelled involved an attorneys' fee award reviewed under an abuse of discretion standard. As we have stated before, a remand for findings on the question of attorneys' fees, "with its accompanying expenditure of additional judicial resources in a case thought to be completed, is a step not lightly taken and one that should be limited to cases in which further action must be taken by the

district court or in which the appellate court has no way open to it to affirm or reverse the district court's action under review." *Carroll Touch*, 15 F.3d at 1584, 27 USPQ2d at 1845. Here, we should defer to the discretion of the district court to deny the motion for attorneys' fees.

For these reasons, I respectfully dissent.