# United States Court of Appeals for the Federal Circuit

---

SENJU PHARMACEUTICAL CO., LTD.,
KYORIN PHARMACEUTICAL CO., LTD., AND
ALLERGAN, INC.,
*Plaintiffs-Appellants,*

v.

APOTEX INC. AND APOTEX CORP.,
*Defendants-Appellees.*

---

2013-1027

---

Appeal from the United States District Court for the District of Delaware in No. 11-CV-1171, Judge Sue L. Robinson.

---

Decided: March 31, 2014

---

RICHARD D. KELLY, Oblon, Spivak, McClelland, Maier, & Neustadt, L.L.P., of Alexandria, Virginia, argued for plaintiffs-appellants. With him on the brief were STEPHEN G. BAXTER, FRANK J. WEST, and TIA D. FENTON.

HUGH S. BALSAM, Locke Lord LLP, of Chicago, Illinois, argued for defendants-appellees. With him on the brief were SCOTT B. FEDER, DAVID B. ABRAMOWITZ, PATRICK C. GALLAGHER, of Chicago, Illinois, and ALAN B. CLEMENT, of New York, New York.

————————————

Before NEWMAN, PLAGER, and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* PLAGER.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

PLAGER, *Circuit Judge.*

This is a patent case calling on us to consider the application of claim preclusion doctrine (res judicata) to a second suit on the same patent based on amended claims resulting from a re-examination of the patent. Plaintiffs-Appellants Senju Pharmaceutical Co., Ltd., Kyorin Pharmaceutical Co., Ltd., and Allergan, Inc. (collectively referred to as "Senju") filed suit in the United States District Court for the District of Delaware against Defendants-Appellees Apotex Inc. and Apotex Corp. ("Apotex"). Plaintiffs alleged infringement of certain claims of Senju's reexamined U.S. Patent No. 6,333,045 (the '045 patent).

In response, Apotex filed a motion to dismiss Senju's lawsuit. Apotex argued that Senju had asserted the same '045 patent against Apotex in a previous infringement action (the "first action") prior to the '045 patent's reexamination, and therefore Senju's subsequent action for infringement of the reexamined '045 patent (the "second action") was barred by the doctrine of claim preclusion. The district court agreed and granted Apotex's motion to dismiss. Senju now appeals.

For the reasons that follow, we conclude that Senju's action for infringement was properly dismissed as barred by claim preclusion, and therefore *affirm* the district court's ruling.

## I. BACKGROUND

The '045 patent relates to an ophthalmic solution for eye drops that contains the drug Gatifloxacin. Gatifloxa-

cin is an antimicrobial agent used to kill various types of bacteria. When treating the eye with Gatifloxacin, tear dilution and the outer layer of the eye, the cornea, can prevent the Gatifloxacin from passing into and treating the space between the cornea and the lens of the eye, the aqueous humor. '045 patent col.1 ll.27–34.

The '045 patent discloses a pharmaceutical solution that resolves this problem by combining the Gatifloxacin with disodium edetate ("EDTA"). *Id.* col.1 ll.54–61. EDTA helps expand the intercellular spaces of the cornea, accelerating the passage of Gatifloxacin solution into the eye. *Id.* The '045 patent as originally issued in December 2001 claimed this combination of Gatifloxacin and EDTA.

Pursuant to the terms of the Hatch-Waxman Act (Pub.L. No. 98–417, 98 Stat. 1585) ("the Act"), Apotex in July 2007 filed an Abbreviated New Drug Application ("ANDA") (No. 79-084) with the Food and Drug Administration ("FDA"). The application requested approval to manufacture, market, and sell a generic version of the Gatifloxacin ophthalmic solution covered by the '045 patent. Apotex filed the Paragraph IV notice specified by the Act, which places the patent-holder on notice of the application. In response, in November 2007 Senju filed its first action against Apotex, arguing that Apotex's ANDA and any manufacture of Gatifloxacin ophthalmic solution were acts of infringement of the '045 patent claims 1–3 and 6–9 under the Act.

The district court held a bench trial, and in June 2010 the district court issued findings of fact and conclusions of law under Rule 52(a). At that time the court held that, though the ANDA product infringed claims 1–3, 6, 7, and 9 of the '045 patent, claims 1–3 and 6–9 were invalid as obvious. *Senju Pharm. Co. v. Apotex Inc.*, 717 F. Supp. 2d 404, 433 (D. Del. 2010). Senju then filed a motion for a new trial or to amend the district court's judgment and findings, specifically regarding the validity of claim 7.

Over one year passed while the district court addressed this and other issues. In December 2011 the district court again concluded that claim 7 was invalid on the ground of obviousness, and it entered final judgment in the case. *Senju Pharm. Co. v. Apotex Inc.*, 836 F. Supp. 2d 196 (D. Del. 2011). In due course, the judgment was affirmed by this court. *See* 485 F. App'x 433 (Fed. Cir. 2012).

In the gap between the district court's issuance in June 2010 of its findings of fact and conclusions of law under Rule 52(a), and its entry of final judgment in the case in December 2011, the patentee Senju filed, in February 2011, with the U.S. Patent and Trademark Office ("PTO") a request for reexamination of claims 1–3, 6, 8, and 9 of the '045 patent. The PTO granted reexamination in April 2011. In response to an initial rejection on the ground of obviousness, Senju amended claim 6 to include several additional limitations, including the amount of Gatifloxacin, the amount of EDTA, and the pH. Senju also added new independent claim 12 with similar limitations. In October 2011, the PTO issued a reexamination certificate cancelling claims 1–3 and 8–11, and certifying amended claim 6, new independent claim 12, and new dependent claims 13–16 as patentable.

On November 28, 2011, still in the gap prior to the entry of final judgment in the first action, Senju filed a new action against Apotex, seeking a declaratory judgment that Apotex's manufacture, use, or sale of Gatifloxacin ophthalmic solution infringed claims 6 and 12–16 set forth in the reexamination certificate of the '045 patent.

In January 2012, several weeks after the district court issued its final judgment in the first case, Apotex filed a Rule 12(b)(6) motion to dismiss this second suit, arguing that Senju was precluded from asserting the reexamined '045 patent in the second action under the doctrine of claim preclusion. Apotex argued that Senju's

second action involved the same cause of action that Senju asserted in its first action.

The district court agreed that Senju had asserted the same cause of action in its second action that it had asserted in its first action. The district court reached this conclusion because "none of the claims [that Senju] added or amended during reexamination were broader than their predecessors," and the reexamined claims "[did] not create any new cause of action that plaintiffs lacked under the original version of the patent." *Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 662 (D. Del. 2012). The district court therefore granted Apotex's motion to dismiss the second action, rendering final judgment for Apotex. *Id.* This appeal by the patentee Senju of the dismissal of its suit followed.

We have jurisdiction to decide Senju's appeal based upon 28 U.S.C. § 1295(a).

## II. DISCUSSION

### A. Principles of Claim Preclusion

Senju's appeal requires us to decide whether Senju's second action is barred by the judicial doctrine now generally known as claim preclusion, earlier known as res judicata and still referred to by that name. "[U]nder the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955).

The underlying policies that the doctrine of claim preclusion is designed to further are considerations of efficiency and finality:

> The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment

of certainty in legal relations.  The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*C.I.R. v. Sunnen*, 333 U.S. 591, 597 (1948) (quoting *Cromwell v. Sac Cnty.*, 94 U.S. 351, 352 (1876)).

Whether a cause of action is barred by claim preclusion is a question of law that we review without deference.  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008).  We look to the law of the regional circuit in which the district court sits for guidance regarding the principles of claim preclusion; however, whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply our own law to that issue.  *Id.* at 1323.

Under Third Circuit law, the home circuit of the district court in this case, claim preclusion principles require: "(1) a final judgment on the merits in a prior suit involving[ ] (2) the same parties or their [privies]; and (3) a subsequent suit based on the same cause of action." *CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir. 1999).  In this case, both parties agree that Senju meets the first two of the three requirements for claim preclusion—that is, Senju's first action resulted in a final judgment on the merits, and both the first and second actions involved the same parties.

The parties disagree, however, regarding the third requirement—whether Senju's first and second actions were based on the same cause of action.  That is the central issue of this appeal.

In applying the policies expressed by the doctrine of claim preclusion, our court has identified certain significant factors to be considered in determining when a cause of action is the same. In *Acumed*, we followed the approach in the Restatement (Second) of Judgments, which states that a cause of action is defined by the transactional facts from which it arises, and the extent of the factual overlap. 525 F.3d at 1323–24 (citing *Restatement (Second) of Judgments* § 24 (1982)); *see also United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011) ("The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap.").

A word of caution. Use of the term "claim" can cause confusion in a patent case involving claim preclusion law. In patent law, a "claim" is a substantive part of the patent document and plays a critically important role in infringement litigation. In civil procedure, and particularly in discussions regarding preclusion law, "claim" is equivalent to "cause of action"—the name "claim preclusion" means preclusion of a cause of action. Whenever possible, other than in referring to the name of the doctrine itself, we will use the longer descriptor "cause of action" when discussing claim preclusion issues; the term "claim" will be used to refer to patent claims. Note, however, that cited texts and judicial opinions may use "claim" and "cause of action" interchangeably.

One of the areas of factual overlap that we consider in a patent case involving claim preclusion is the overlap of *the product or process* accused in the instant action with *the product or process* accused in the prior action. If the products or processes are essentially the same, then claim preclusion may apply. *Acumed*, 525 F.3d at 1324 (stating that "claim preclusion does not apply unless the accused device in the action before the court is 'essentially the same' as the accused device in a prior action between the parties that was resolved by a judgment on the mer-

its") (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479–80 (Fed. Cir. 1991)).

We also consider whether the *same patents* are involved in both suits. Ordinarily, "[e]ach patent asserted raises an independent and distinct cause of action." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996). Claim preclusion will generally apply when a patentee seeks to assert the same patent against the same party and the same subject matter. *Id.* at 1557 (concluding that five patents already asserted against the same party in a previous action were properly dismissed on res judicata grounds); *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1305 (Fed. Cir. 2007) (noting that two cases involved the same cause of action because the cases included the same patent and the same accused devices). How this general rule is to be understood is a key issue in this case.

### B.   Application of Claim Preclusion Principles

### 1.

With the preceding legal principles in mind, we turn to the question of factual overlap of Apotex's first and second actions. The first area of overlap to be considered is whether *the products* in the first and second actions are "essentially the same."

In a case such as this, the 'product' is the drug described in the ANDA. *See Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1380 (Fed. Cir. 2008) (reviewing for purposes of claim preclusion whether a first ANDA formulation and a second ANDA formulation were "essentially the same"). The drug described in an ANDA can be viewed as the 'product' for claim preclusion purposes even though the accused infringer has not yet made, used, or sold the drug. This legal fiction—the fiction of a 'product' that may never have been made, used, or sold in the United States by the alleged infringer—exists because the

filing of an ANDA creates a statutory act of infringement. 35 U.S.C. § 271(e)(2)(A); *Bayer Schering Pharma AG v. Lupin, Ltd.*, 676 F.3d 1316, 1318 (Fed. Cir. 2012) ("[T]he Hatch–Waxman Act creates a mechanism that allows for prompt judicial determination of whether the ANDA applicant's drug or method of using the drug infringes a valid patent. The Act makes it an act of infringement to file an ANDA for a drug or for a use of the drug that is claimed in a patent.").

In its first suit, Senju alleged infringement based on Apotex's ANDA No. 79-084 and its described Gatifloxacin ophthalmic solution. J.A. 104–05. In its second suit, this case, Senju requested a declaratory judgment of infringement based on Apotex's submission of the same ANDA (No. 79-084). J.A. 124–25. Thus, both actions involve the same Gatifloxacin ophthalmic solution described in ANDA No. 79-084. Because the product in the second action completely overlaps with the product in the first action, there is on that basis no new cause of action.

2.

The more difficult question is whether the same patent, or more precisely the same patent rights, were involved in both suits. Senju argues that the reexamination created a new cause of action because the reexamined patent claims are substantially different from the claims in the original '045 patent. The reexamined claims are different according to Senju because they include the amount of Gatifloxacin or its salt, the pH range, and the amount of EDTA, none of which are included in the original claims.

Senju argues that, under our precedents, the district court was required to consider these as new claims and determine whether the claims as a whole are "substantially the same" in accordance with its understanding of the analysis outlined in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340-42 (Fed. Cir. 2012).

Senju contends that the district court erred by dismissing its case as barred by claim preclusion without performing this analysis.

Apotex responds that the district court correctly dismissed Senju's case. According to Apotex, in order for Senju to comply with the statutory requirements for reexamination outlined in 35 U.S.C. § 305, the claim scope of its reexamined '045 claims had to be the same as or narrower than the claim scope of the original '045 claims. Since the claim scope of Senju's reexamined '045 claims was subsumed by the claim scope of its original claims, Apotex contends that the '045 reexamined patent did not give Senju any additional rights against Apotex's product that Senju did not already possess in its first lawsuit.

Apotex argues that, under its understanding of *Aspex*, reexamined claims cannot create a new cause of action that did not exist before. According to Apotex, Senju has engaged in 'claim splitting,' and its second suit, the instant suit, is barred by claim preclusion.

On these facts we believe Apotex has the better argument. The argument can be viewed in terms of the cause of action in each suit. Senju's focus is on the patent claims in the first suit. Senju's theory is based on the patent claims that are found in the original patent and the cause of action thereunder; the cause of action in the second suit is based on the new or amended patent claims now in the patent as a result of the re-examination. According to Senju, in order to determine whether a cause of action for infringement is the same in both suits, the differences between the patent claims must be examined to determine whether there are substantial differences, in which case the causes of action are different. Senju argues that the failure of the trial court to have made detailed comparisons requires a remand for that to be done.

Apotex's response focuses on whether it is the same patented invention, and only derivatively on whether the patent claims asserted in each of the suits are the same or substantially the same. Apotex argues that the narrower claims that resulted from this reexamination, claims that presumably now avoid the prior art that rendered the original claims invalid, are necessarily subsets of those broader claims and therefore their subject matter was included in the original infringement suit. Apotex further argues that Senju's reliance on cases that involve reissue of a patent is misplaced, since reissue can result in broadened claims under certain circumstances, whereas reexamination does not permit broadening.

Both parties cite to and find support for their positions in language found in our recent case of *Aspex Eyeware*. The history of that litigation—involving a long series of court battles between the several parties—is convoluted and need not be laid out here.

What is important for our understanding of this circuit's claim preclusion law is that the opinion in *Aspex* addressed four separate issues. First was the issue in this case: whether a new cause of action arose as a result of the reexamination that had occurred; second was whether the same product was at issue in both cases (it was not an ANDA case); third was the effect of a settlement agreement between the parties; and fourth were certain claim construction issues the court undertook to address.

In the course of discussing the various issues the opinion made statements that, taken out of their context, could be read as relating to the first issue, that is, whether a new cause of action was created by the reexamination. For purposes of determining our precedents regarding that issue, it is only the first section of the discussion in *Aspex* to which we must attend.

Regarding claim preclusion, the opinion summarized patentee Aspex's argument in essentially the same terms as plaintiff Senju has made here:

> Aspex's main argument is that res judicata does not bar this action, because Aspex's claims in this case are based on claims [ ] amended and added in reexamination. Because those claims were not in existence (at least not in the same form) at the time the prior actions were filed against [the defendants], Aspex argues that the new claims created new causes of action that Aspex could not have pursued in the previous cases. Accordingly, Aspex argues, res judicata does not bar it from pursuing the claims in this case.

*Id*. at 1340–41.

The court rejected that argument, starting its discussion with:

> Amended [ ] and new claim[s] of the reexamined [ ] [']545 patent did not create new causes of action for Aspex, separate from the causes of action created by the original [ ] [']545 patent. Those two claims were merely new versions of claims that were part of the [ ] [']545 patent prior to its reexamination.

*Id*. at 1341.

The court in its conclusion of the discussion of this issue said,

> [c]onsistent with that rule [the rule that new claims that emerge from reexamination must not be broader than the original claims], the claims on which Aspex relies are not broader than their predecessor; they therefore did not create a new legal right against infringement that Aspex lacked under the original version of the patent.

*Id.* at 1342.

In between the start and the conclusion, the *Aspex* court pointed out two reasons why the patentee's reliance on cases involving reissued patents was in error. Unlike reissue, reexamination does not result in the surrender of the original patent and the issuance of a new patent. Furthermore, the court noted, the two claims on which Aspex relied are different only in the additional limiting characteristics that were added, and thus were not "materially different" from the original claim, and did not create a new cause of action that was not previously available. *Id.*

In this case we reach the same conclusion that the *Aspex* court did—claims that emerge from reexamination do not in and of themselves create a new cause of action that did not exist before. We reach this conclusion because a so-called "reexamined patent" is the original patent; it has just been examined another time as indicated in its reexamination certificate.[1] Reexamination does not involve the filing of a new patent application nor the issuance of a new patent.

The reexamination process does permit some amendment of the patent and its claims, but any amendment that occurs during reexamination is statutorily constrained. For example, amendments to the disclosure cannot introduce new matter. 35 U.S.C. § 132(a) ("No amendment shall introduce new matter into the disclo-

---

[1]    After reexamination, the PTO issues a reexamination certificate that memorializes the results of the reexamination process. The reexamination certificate identifies the patent and "confirm[s] any claim of the patent determined to be patentable, and incorporat[es] in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a).

sure of the invention"); 35 U.S.C. § 112, ¶ 1 (2011); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (stating that the disclosure must "'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed'") (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)).

Any change to the original patent is further constrained by 35 U.S.C. § 305, which states that "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." We have strictly interpreted § 305 to prohibit any broadening amendments. The reexamined claim cannot be broader in any respect, even if it is narrowed in other respects. *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1303 (Fed. Cir. 2008). Therefore, while reexamination can make certain changes in the patent, such changes are strictly circumscribed by the original patent's disclosure and claim scope.

As a result, a reexamined patent claim cannot contain within its scope any product or process which would not have infringed the original claims. *Id.* Put another way, because the patent right is a right to exclude whose outer boundary is defined by the scope of the patent's claims, as explained in *Aspex*, reexamination does not provide larger claim scope to a patentee than the patentee had under the original patent claims.

The court in *Aspex* held that the original patent claims in that case and the issued reexamination claims were not materially different. This led Senju to argue that in every case it is necessary to make that factual determination in detail. But that is an unwarranted extension of the point. Both in *Aspex* and in this case the district court could readily ascertain that the reexamined claims were essentially the original claims with the addition of limitations designed to avoid prior art. In

*Aspex* the appellate court noted that fact; in our case the trial court noted that the amended and new claims were essentially the original claims with limiting words added.[2]

Whether it is possible that a reexamination could ever result in the issuance of new patent claims that were so materially different from the original patent claims as to create a new cause of action, but at the same time were sufficiently narrow so as not to violate the rule against reexamined claims being broader than the original claims, is a question about which we need not opine—that is not the case before us. We hold that, in the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created. This applies whether the judgment in the original suit was based on invalidity of the claims or simply on non-infringement.

We conclude, as the court did in *Aspex*, that the claims in this case that emerged from reexamination do not create a new cause of action that did not exist before. Senju cannot sue Apotex on the same patent twice.

At its core, what Senju seeks is a do-over. Having lost its suit, Senju seeks to use reexamination to obtain a second bite at the apple, to assert its patent against the same party, Apotex, and the same product, the Gatifloxa-

---

[2] "Claim 6 was amended to add limiting words. Claim 12 is similar to canceled claim 1, except that it adds the gatifloxacin concentration, EDTA concentration, and pH characteristics. Claims 13 through 15 are dependent on claim 12, and claim 16 is dependent on claim 15. Consequently, claims 6 and 12–16 are all narrower in scope than the original claims." *Senju Pharma. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 662 (D. Del. 2012).

cin ophthalmic solution described in ANDA No. 79-084. But that is exactly what claim preclusion was designed to prevent. Claim preclusion "applies to repetitious suits involving the same cause of action." *C.I.R.*, 333 U.S. at 597. Claim preclusion exists to "encourage[ ] reliance on judicial decisions, bar[ ] vexatious litigation, and free[ ] the courts to resolve other disputes." *Brown*, 442 U.S. at 131.

Senju raises several additional arguments about purported differences between its first and second suits based on issues of proof under the new patent claims. We have examined these additional arguments and find them without merit, for the accused products are the same in both actions. Although Senju criticizes the district court's opinion, in any event that argument is immaterial since "[w]e sit to review judgments, not opinions." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983).

Senju concedes that all of the elements of claim preclusion are met save the last: whether its first and second suits were based on the same cause of action. Because we conclude that the facts of Senju's first and second actions overlap and the reexamination of the '045 patent did not create a new cause of action, the resolution of this case is straightforward: Senju's suit against Apotex is barred on the principles of claim preclusion. For these reasons, we *affirm* the district court's dismissal of Senju's suit.

## III. CONCLUSION

The judgment of the district court is affirmed.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**SENJU PHARMACEUTICAL CO., LTD.,
KYORIN PHARMACEUTICAL CO., LTD.,** AND
**ALLERGAN, INC.,**
*Plaintiffs-Appellants,*

**v.**

**APOTEX INC.** AND **APOTEX CORP.,**
*Defendants-Appellees.*

_____

2013-1027

_____

Appeal from the United States District Court for the District of Delaware in No. 11-CV-1171, Judge Sue L. Robinson.

_____

O'MALLEY, *Circuit Judge*, dissenting.

The dispositive issue in this case is whether Senju's reexamined claims granted new patent rights that Senju could not have asserted in its first lawsuit against Apotex. The majority says that, "a so-called 'reexamined patent' *is* the original patent." Maj. Op. at 13 (emphasis added). Under the majority's reasoning, after a patentee asserts a patent's original claims in one lawsuit, a subsequent lawsuit asserting the patent's reexamined claims against the same defendant is an improper attempt to revisit a patent that has already been adjudicated. But, it is the rights created by a patent that are adjudicated, and it is

on whether new rights were obtained through reexamination that I believe we must focus.

Although reexamined claims cannot be broader in *scope* than original claims, they sometimes grant broader *rights* than original claims. This case illustrates this fact. In Senju's first action against Apotex, the district court ruled that the asserted original claims of U.S. Patent No. 6,333,045 were invalid as obvious, meaning that Senju had *no rights at all* under these claims. *Senju Pharm. Co. v. Apotex Inc.*, 836 F. Supp. 2d 196, 210–11 (D. Del. 2011) *aff'd*, 485 F. App'x 433 (Fed. Cir. 2012); *Senju Pharm. Co. v. Apotex Inc.*, 717 F. Supp. 2d 404, 433 (D. Del. 2010). The narrowed claims that emerged from reexamination after the first lawsuit was filed but before final judgment was entered in that action were presumptively valid, however, and may have—for the first time—given Senju actionable legal rights. *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 (Fed. Cir. 2001) (noting that the presumption of validity applies to reexamined claims). If reexamination did, in fact, create rights that did not exist in time for Senju to assert them in the first action against Apotex, claim preclusion should not prevent Senju from asserting its new rights in this action. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case"). To rule otherwise would fault Senju for failing to raise claims that did not exist—a problematic result that the majority's analysis would allow.

Determining whether the '045 patent's reexamined claims actually provided Senju new rights requires comparing the reexamined claims with the patent's original claims. Only if the reexamined claims are substantially the same as Senju's original claims can we conclude that

the reexamined claims cover *rights* that could have been asserted in the first action against Apotex.[1]   Because the district court failed to conduct this necessary comparison, I would vacate its judgment and remand for further analysis.  Accordingly, I respectfully dissent.

## I.

The doctrine of claim preclusion applies in *only* two ways: (1) to prevent a party from relitigating claims that have already been resolved, and (2) to bar a party from bringing certain claims that could have been brought in a prior lawsuit.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("There is little to be added to the doctrine of res judicata as developed in the case law of this Court.  A final judgment on the merits of an action precludes the parties and their privies from relitigating issues that were or could have been raised in that ac-

---

[1]   Importantly, neither the majority nor Apotex contends that Senju's reexamined *claims* could have been asserted in the original action.  Although Senju's reexamined claims issued before final judgment was entered in the first action, Senju did not have an opportunity to bring its reexamined claims in that case.  A judgment had been entered in the first litigation prior to the issuance of Senju's reexamined claims.  When the reexamined claims issued, the district court had reopened the record—but only for the limited purpose of allowing additional testimony regarding the validity of claim 7 of the '045 patent.  If Senju's reexamined claims could have been brought in the original action, then traditional principles of claim preclusion would bar claims for past infringement, and the doctrine set forth in *Kessler v. Eldred*, 206 U.S. 285 (1907), might well bar claims of infringement with respect to actions occurring post-judgment, despite our holding in *Aspex*.  *See Brain Life, LLC v. Elekta Inc.*, No. 2013-1239 (Fed. Cir. ___, 2014).  That is not this case, however.

tion."); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). We expect parties to bring all their mature claims arising from the same set of facts in a single lawsuit, and not to dispute rights that have already been determined. But we have never expected parties to assert rights that they do not have. *See Lawlor*, 349 U.S. at 328; *see also Alexander & Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986) (noting that res judicata "does not bar claims arising subsequent to the entry of [a prior] judgment and which did not then exist or could not have been sued upon in the prior action"). Nonetheless, the majority seems to introduce such an expectation into our case law today—requiring patentees to assert rights they have, *or may later acquire*, in a single lawsuit. This unprecedented expansion of the doctrine of claim preclusion is not one that I endorse.

The majority correctly observes that "a reexamined claim cannot contain within its scope any product or process which would not have infringed the original claims." Maj. Op. at 14. Claims cannot be broadened through reexamination under 35 U.S.C. § 305. Thus, if a product does not infringe a patent's original claims, the product necessarily will not infringe any of that patent's reexamined claims. Consequently, if a court enters final judgment that a product does not infringe a patent's original claims, then the product's noninfringement of any reexamined claims is already "a thing adjudicated," and traditional notions of claim and issue preclusion collectively would prevent a party from asserting infringement of the reexamined claims in a subsequent action. *See* Black's Law Dictionary (9th ed. 2009) (translating "res judicata" as "a thing adjudicated"). In other words, when infringement is the only consideration, reexamined claims cannot expand a patentee's rights beyond those granted by the original claims.

The majority, however, does not consider how issues of validity affect the preclusion analysis. With respect to

infringement, a product that does not infringe a broad original claim will, in every instance, not infringe a narrower reexamined claim (or a reexamined claim of identical scope to an original claim). But, the same analysis does not apply to validity determinations. Here, Senju's original claims were invalidated, meaning that they provided Senju with no patent rights. *Senju*, 836 F. Supp. 2d at 210–11; *Senju*, 717 F. Supp. 2d at 433. This does not mean that Senju necessarily had no patent rights under its reexamined claims solely because they could not be broader in scope than Senju's original claims. During reexamination of the '045 patent, the United States Patent and Trademark Office ("PTO") considered the prior art and arguments that led the district court to invalidate Senju's original asserted claims, as well as the district court's opinion holding those claims invalid. *See Senju Pharm. Co. v. Apotex Inc.*, 891 F. Supp. 2d 656, 658 (D. Del. 2012). The PTO agreed with the district court that the original claims were obvious. *See id.* Senju, however, narrowed the scope of its claims during reexamination, and the PTO ultimately determined that these narrowed claims were patentable. *See id.* at 658–59. The reexamined claims that issued were presumptively valid and, unlike the invalid original claims, may have provided Senju with actionable patent rights (i.e., a new cause of action).

Despite the district court's determination that the '045 patent's original claims were invalid, Senju's right to exclude under its reexamined claims was only "a thing adjudicated" if those claims were substantially the same as its original claims. Otherwise, Senju's second lawsuit against Apotex involved new patent rights and raised new questions of validity and infringement that the courts have never answered. The majority acknowledged that the precise issue presented is "whether . . . the same patent *rights*[ ] were involved in both suits," as opposed to whether "the same *patents*" were involved. Maj. Op. at 9

(emphases added).  Despite this, the majority concludes that it "need not opine" on "[w]hether it is possible that a reexamination could ever result in the issuance of new patent claims that were so materially different from the original patent claims as to create a new cause of action . . . ."  *Id.* at 15.  That issue, however, is squarely presented here, and Senju's reexamined and original claims must be compared to determine whether reexamination created a new cause of action.[2]

## II.

The majority's analysis is based largely on this court's decision in *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335 (Fed. Cir. 2012), but *Aspex* merely applied traditional claim preclusion principles and does not support the majority's expansive view of the doctrine.  In 2002, Aspex Eyewear, Inc. ("Aspex") alleged that Revolution Eyewear, Inc. ("Revolution") had infringed claims 6, 22, and 34 of a patent claiming magnetic clip-on eyewear.  *Id.* at 1338.  The district court entered summary judgment of *noninfringement* with respect to claims 6 and 34, and granted summary judgment that claim 22 was infringed and not invalid.  *Id.* at 1338–39.  In 2008, the PTO

---

[2]    Before it would be appropriate to compare Senju's reexamined and original claims, the majority suggests that there must be a "clear showing that . . . a material difference in fact exists" between the original and reexamined claims.  Maj. Op. at 15.  The basis for requiring this heightened showing or placing the burden on the patentee is unclear.  Because the majority has determined that Senju has not shown such a material difference here, moreover—where Senju's reexamined claims are presumptively valid and its original claims have been ruled invalid—it is difficult to imagine how a party could meet the heightened requirement that the majority imposes today.

completed a reexamination of the same patent, which, among other things, allowed an amended version of claim 23 and allowed new claim 35, which depended from claim 23. *Id.* at 1339. In 2009, Aspex filed a separate lawsuit against Revolution, asserting infringement of reexamined claims 23 and 35. *Id.* at 1340. The district court determined that claim preclusion barred Aspex's assertion of its reexamined claims, and our court agreed that the reexamined claims did not create rights beyond those Aspex had under its original claims. *Id.* at 1340, 1342.

Importantly, both the trial court in *Aspex* and our court conducted the same type of analysis I would require the district court to conduct here: comparing the patent's reexamined claims with its original claims to determine whether they were substantially the same. *See id.* at 1340–42. After careful analysis, our court agreed with the district court that Aspex's newly asserted claims "were merely new versions of claims that were part of the . . . patent prior to its reexamination." *Id.* at 1341. We observed that the amendment to claim 23 during reexamination was "insubstantial" and that the limitation added by claim 35 was "an insignificant change." *Id.* Thus, because Aspex's reexamined claims were substantially the same as its original claims, we concluded that no new grounds to assert infringement were presented and that "allowing Aspex to pursue amended claim 23 and new claim 35 . . . would present a clear instance of 'claim splitting,' which is forbidden by the principles of res judicata." *Id.* (quoting *Mars Inc. v. Nippon Conlux Kabushiki–Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995)). In short, in *Aspex*, we determined that Aspex's reexamined claims covered rights that could have been asserted prior to reexamination—a traditional basis for applying claim preclusion. Neither the district court nor the majority, however, makes this critical determination here, rendering their analyses incomplete.

In expanding the reach of claim preclusion, the majority highlights dicta in *Aspex* that I do not agree is applicable to this case.  In *Aspex*, we did state that "claims that emerge from reexamination do not create a new cause of action that did not exist before."  *Id*. at 1342 (citing *Hoffman v. Wisner Classic Mfg. Co.*, 927 F. Supp. 67, 73 (E.D.N.Y. 1996)).  But, in *Aspex*, none of the original claims had been invalidated.  We did not assess whether entirely new patent rights might have emerged from reexamination.  The original case turned on whether the accused products infringed the claims of the patent at issue.  Because we found the new claims coextensive with the original claims, we found the noninfringement finding in the first action controlling.  Consequently, the statement in *Aspex* that reexamination cannot create new rights should have no bearing here, where the facts of the case prove otherwise.

Also missing from the discussion is the *Aspex* court's articulation of the principles that should govern here.  In *Aspex*, we expressly noted: "If a claim did not exist at the time of the earlier action, it could not have been asserted in that action and is not barred by res judicata."  *Aspex*, 672 F.3d at 1342.  We stressed this idea again, stating: "res judicata requires a party to assert all claims that the party could have asserted in the earlier lawsuit; it follows that if the party could not have asserted particular claims . . . those claims could not have been asserted and therefore are not barred by res judicata."  *Id*.  If Senju's reexamined claims are not substantially the same as its original claims—as may well be true—then they do not encompass rights that Senju could have asserted in the first action.  In such a case, *Aspex* makes clear that claim preclusion should not apply.

### III.

Finally, the majority's concerns about Senju's use of "reexamination to obtain a second bite at the apple" are

not well-founded.  Maj. Op. at 15.  Reexamination routinely provides defendants with a second opportunity to invalidate a patent's claims.  Even after a defendant fails to invalidate a patent in district court, it can nonetheless strip the plaintiff of any right to relief if it succeeds in invalidating the plaintiff's claims in reexamination before final judgment is entered in the first case.  *See, e.g., Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013).  Here, as the majority concedes, the reexamination certificate issued before final judgment was entered in the first action before the district court.  The reexamination cancelled claims 1–3 and 8–11 of the '045 patent and certified amended claim 6, new independent claim 12, and new dependent claims 13–16 as patentable.  Still before final judgment was entered, Senju filed its second action asserting the new, presumptively valid, claims that emerged from reexamination.  Thus, Senju's potentially new rights were both granted by the PTO and asserted in federal court before the final judgment in the first action.  Particularly when a plaintiff is acting before the entry of a final judgment resolving any patent rights—a timeframe where defendants are free to use reexamination to alter patent rights that are being adjudicated before a district court—there seems to be no basis for preventing a plaintiff from making favorable use of reexamination, as defendants often do.

## IV.

In sum, the majority's analysis rests on a mischaracterization of the rights granted by reexamined claims, resulting in an unprecedented expansion of the doctrine of claim preclusion.  For the reasons stated above, I dissent.